# Exhibit A



**SUMMONS - CIVIL**
JD-CV-1   Rev. 2-20
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a, 52-48, 52-259;
P.B. §§ 3-1 through 3-21, 8-1, 10-13

| For information on ADA accommodations, contact a court clerk or go to: **www.jud.ct.gov/ADA.** |
|---|

STATE OF CONNECTICUT
**SUPERIOR COURT**
*www.jud.ct.gov*

**Instructions are on page 2.**

☐ Select if amount, legal interest, or property in demand, not including interest and costs, is LESS than $2,500.

☒ Select if amount, legal interest, or property in demand, not including interest and costs, is $2,500 or MORE.

☐ Select if claiming other relief in addition to, or in place of, money or damages.

**TO: Any proper officer**
By authority of the State of Connecticut, you are hereby commanded to make due and legal service of this summons and attached complaint.

| Address of court clerk *(Number, street, town and zip code)* | Telephone number of clerk | Return Date *(Must be a Tuesday)* |
|---|---|---|
| 123 Hoyt Street, Stamford 06905 | ( 203 ) 965 – 5308 | July 21, 2020 |

| ☒ Judicial District | G.A. | At *(City/Town)* | Case type code *(See list on page 2)* |
|---|---|---|---|
| ☐ Housing Session | Number: | **Stamford/Norwalk Judicial District** | Major: **V**   Minor: **06** |

**For the plaintiff(s) enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* | Juris number *(if attorney or law firm)* |
|---|---|
| Debbi Cotterell, 17 Renwick Street, Unit C, Stamford, CT 06902 | |

| Telephone number | Signature of plaintiff *(if self-represented)* |
|---|---|
| ( 203 ) 943 – 9953 | *Debbi Cotterell* |

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book. ☒ Yes  ☐ No | E-mail address for delivery of papers under Section 10-13 of the Connecticut Practice Book *(if agreed)* **debbisimms@gmail.com** |
|---|---|

| Parties | Name *(Last, First, Middle Initial)* and address of each party *(Number; street; P.O. Box; town; state; zip; country, if not USA)* | |
|---|---|---|
| **First plaintiff** | Name: **Cotterell, Debbi** <br> Address: **17 Renwick Street, Unit C, Stamford, CT 06902** | P-01 |
| **Additional plaintiff** | Name: <br> Address: | P-02 |
| **First defendant** | Name: **General Motors LLC** <br> Address: **300 Renaissance Center, Detriot, Michigan, 48265** | D-01 |
| **Additional defendant** | Name: **ACAR Leasing Ltd, d/b/a GM Financial Leasing** <br> Address: **801 Cherry Steet, Suite 3500, Fort Worth, TX 76102** | D-02 |
| **Additional defendant** | Name: **RICHARD CHEVROLET, INC** <br> Address: **1405 Highland Avenue, Chesire, CT 06410** | D-03 |
| **Additional defendant** | Name: **H & L CHEVROLET, INC.** <br> Address: **1416 Post Road, Darien, CT 06820** | D-04 |

| Total number of plaintiffs: 1 | Total number of defendants: 4 | ☐ Form JD-CV-2 attached for additional parties |
|---|---|---|

## Notice to each defendant

1. **You are being sued.** This is a summons in a lawsuit. The complaint attached states the claims the plaintiff is making against you.
2. To receive further notices, you or your attorney must file an *Appearance* (form JD-CL-12) with the clerk at the address above. Generally, it must be filed on or before the second day after the Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to appear.
3. If you or your attorney do not file an *Appearance* on time, a default judgment may be entered against you. You can get an *Appearance* form at the court address above, or on-line at https://jud.ct.gov/webforms/.
4. If you believe that you have insurance that may cover the claim being made against you in this lawsuit, you should immediately contact your insurance representative. Other actions you may take are described in the Connecticut Practice Book, which may be found in a superior court law library or on-line at https://www.jud.ct.gov/pb.htm.
5. If you have questions about the summons and complaint, you should talk to an attorney.
   **The court staff is not allowed to give advice on legal matters.**

| Date | Signed *(Sign and select proper box)* | ☐ Commissioner of Superior Court <br> ☐ _____ Clerk | Name of person signing |
|---|---|---|---|

| If this summons is signed by a Clerk: | | *For Court Use Only* |
|---|---|---|
| a. The signing has been done so that the plaintiff(s) will not be denied access to the courts. | | File Date |
| b. It is the responsibility of the plaintiff(s) to ensure that service is made in the manner provided by law. | | |
| c. The court staff is not permitted to give any legal advice in connection with any lawsuit. | | |
| d. The Clerk signing this summons at the request of the plaintiff(s) is not responsible in any way for any errors or omissions in the summons, any allegations contained in the complaint, or the service of the summons or complaint. | | |

| I certify I have read and understand the above: | Signed *(Self-represented plaintiff)* <br> *Debbi Cotterell* | Date <br> 6/15/2020 | Docket Number |
|---|---|---|---|

**Instructions**

1. Type or print legibly. If you are a self-represented party, this summons must be signed by a clerk of the court.

2. If there is more than one defendant, make a copy of the summons for each additional defendant. Each defendant must receive a copy of this summons. Each copy of the summons must show who signed the summons and when it was signed. If there are more than two plaintiffs or more than four defendants, complete the Civil Summons Continuation of Parties (form JD-CV-2) and attach it to the original and all copies of the summons.

3. Attach the summons to the complaint, and attach a copy of the summons to each copy of the complaint. Include a copy of the Civil Summons Continuation of Parties form, if applicable.

4. After service has been made by a proper officer, file the original papers and the officer's return of service with the clerk of the court.

5. Use this summons for the case type codes shown below.

Do *not* use this summons for the following actions:

(a) Family matters (for example divorce, child support, custody, paternity, and visitation matters)

(b) Any actions or proceedings in which an attachment, garnishment or replevy is sought

(c) Applications for change of name

(d) Probate appeals

(e) Administrative appeals

(f) Proceedings pertaining to arbitration

(g) Summary Process (Eviction) actions

(h) Entry and Detainer proceedings

(i) Housing Code Enforcement actions

**Case Type Codes**

| MAJOR DESCRIPTION | CODE Major/Minor | MINOR DESCRIPTION | MAJOR DESCRIPTION | CODE Major/Minor | MINOR DESCRIPTION |
|---|---|---|---|---|---|
| Contracts | C 00 | Construction - All other | Property | P 00 | Foreclosure |
| | C 10 | Construction - State and Local | | P 10 | Partition |
| | C 20 | Insurance Policy | | P 20 | Quiet Title/Discharge of Mortgage or Lien |
| | C 30 | Specific Performance | | P 30 | Asset Forfeiture |
| | C 40 | Collections | | P 90 | All other |
| | C 50 | Uninsured/Underinsured Motorist Coverage | Torts (Other than Vehicular) | T 02 | Defective Premises - Private - Snow or Ice |
| | C 60 | Uniform Limited Liability Company Act – C.G.S. 34-243 | | T 03 | Defective Premises - Private - Other |
| | C 90 | All other | | T 11 | Defective Premises - Public - Snow or Ice |
| Eminent Domain | E 00 | State Highway Condemnation | | T 12 | Defective Premises - Public - Other |
| | E 10 | Redevelopment Condemnation | | T 20 | Products Liability - Other than Vehicular |
| | E 20 | Other State or Municipal Agencies | | T 28 | Malpractice - Medical |
| | E 30 | Public Utilities & Gas Transmission Companies | | T 29 | Malpractice - Legal |
| | E 90 | All other | | T 30 | Malpractice - All other |
| Housing | H 10 | Housing - Return of Security Deposit | | T 40 | Assault and Battery |
| | H 12 | Housing - Rent and/or Damages | | T 50 | Defamation |
| | H 40 | Housing - Housing - Audita Querela/Injunction | | T 61 | Animals - Dog |
| | H 50 | Housing - Administrative Appeal | | T 69 | Animals - Other |
| | H 60 | Housing - Municipal Enforcement | | T 70 | False Arrest |
| | H 90 | Housing - All Other | | T 71 | Fire Damage |
| Miscellaneous | M 00 | Injunction | | T 90 | All other |
| | M 10 | Receivership | Vehicular Torts | V 01 | Motor Vehicles* - Driver and/or Passenger(s) vs. Driver(s) |
| | M 15 | Receivership for Abandoned/Blighted Property | | V 04 | Motor Vehicles* - Pedestrian vs. Driver |
| | M 20 | Mandamus | | V 05 | Motor Vehicles* - Property Damage only |
| | M 30 | Habeas Corpus (extradition, release from Penal Institution) | | V 06 | Motor Vehicle* - Products Liability Including Warranty |
| | M 40 | Arbitration | | V 09 | Motor Vehicle* - All other |
| | M 50 | Declaratory Judgment | | V 10 | Boats |
| | M 63 | Bar Discipline | | V 20 | Airplanes |
| | M 66 | Department of Labor Unemployment Compensation Enforcement | | V 30 | Railroads |
| | M 68 | Bar Discipline - Inactive Status | | V 40 | Snowmobiles |
| | M 70 | Municipal Ordinance and Regulation Enforcement | | V 90 | All other |
| | M 80 | Foreign Civil Judgments - C.G.S. 52-604 & C.G.S. 50a-30 | | | *Motor Vehicles include cars, trucks, motorcycles, and motor scooters. |
| | M 83 | Small Claims Transfer to Regular Docket | Wills, Estates and Trusts | W 10 | Construction of Wills and Trusts |
| | M 84 | Foreign Protective Order | | W 90 | All other |
| | M 89 | CHRO Action in the Public Interest - P.A. 19-93 | | | |
| | M 90 | All other | | | |

**RETURN DATE:**     **July 21, 2020**

| | |
|---|---|
| **DEBBI COTTERELL** ) | **SUPERIOR COURT** |
| ) | |
| **Plaintiff,** ) | |
| ) | **J.D. OF FAIRFIELD** |
| ) | |
| **V.** ) | **AT STAMFORD** |
| ) | |
| **GENERAL MOTORS LLC,** ) | **June 15, 2020** |
| **ACAR LEASING LTD d/b/a** ) | |
| **GENERAL MOTORS FINANCIAL LEASING,** ) | |
| **RICHARD CHEVROLET, INC., and** ) | |
| **H & L CHEVROLET, INC.** ) | |
| ) | |
| **Defendants.** ) | |

## <u>COMPLAINT</u>

1.   Debbi Cotterell is a citizen of the state of Connecticut who presently resides in Stamford, CT 06902.

2.   Defendant General Motors LLC (hereinafter "General Motors") is a Delaware limited liability company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan. General Motors is registered to do business in the State of Connecticut.

3.   Defendant ACAR Leasing Ltd, d/b/a GM Financial Leasing (hereinafter "ACAR Leasing") is a Texas Corporation with its principal place of business located at 801 Cherry Street, Suite 3500, Fort Worth, TX 76102 conducting business in Connecticut.

4.   Defendant Richard Chevrolet, Inc. (hereinafter "Richard Chevrolet") is a Connecticut corporation with a principal place of business at 1405 Highland Avenue, Cheshire, CT 06410.

5.   Defendant H & L Chevrolet, Inc. (hereinafter "H &L Chevrolet") is a Connecticut corporation with a principal place of business at 1416 Post Road, Darien, CT 06820.

6.   The defective vehicle which forms the basis for this action is a 2015 Chevrolet Impala sedan (hereinafter "2015 Impala") vehicle identification number 2G1125S30F9251501, that was either designed, manufactured, sold, marketed, financed, repaired by Defendants under the brand name Chevrolet.

7.   Plaintiff filed an amended complaint in Federal Court on July 19, 2019 which her state law claims were dismissed without prejudice on December 18, 2019.  Plaintiff now brings her claims in state court. **[Exhibit A]**

9.    On or about August 10, 2015 Debbi Cotterell and Timothy Smith leased the 2015 Impala and traded in their 2005 Chrysler Pacifica to Richard Chevrolet. Richard Chevrolet accessed Plaintiff's credit report and deem her credit worthy to lease the 2015 Impala.

10.   Prior to leasing the vehicle Plaintiff reviewed advertisement, dealership brochures and spoke to sales representatives.  The 2015 Impala was marketed and sold to Defendant as safe and reliable vehicle by Richard Chevrolet.  The Plaintiff reviewed and signed leasing agreement with finance manager and believed the 2015 Impala was free of any defects.

11.   All service appointments from August 2015 through September 2016 were conducted at Richard Chevrolet.

12.   On September 11, 2016, the Steering Failure indicator message popped up on the dashboard.  Plaintiff immediately called her husband because she was terrified.  Her husband instructed her to bring the vehicle to the nearest Autozone since this was a Sunday and he didn't believe the dealer was open.  He believed there must have been a leak or something causing the issue.

13. At this time, the steering began to gradually lock up and became difficult.  The Autozone service member told Plaintiff to bring the car to a dealership because the steering was electric.  At no time did the Autozone service member mention any suspension issue when he looked the vehicle over.

14.   Plaintiff brought the car to H & L Chevrolet in Darien, Connecticut, and left the  vehicle in front of the Service Area with a completed service card that said approximately "So scary and dangerous, steering started to fail, and the vehicle became difficult to drive".

15.   The next morning, September 12, 2016 before 8:00 a.m., the H &L Chevrolet service member called the Plaintiff and asked, "how did you get the 2015 Impala here because I was barely able to get it into the service area".  Plaintiff told him that it was difficult, and the entire experience was scary.  The plan was to diagnosis the vehicle and get back to Plaintiff.

16.   Within an hour, the service member called the Plaintiff and said, "you have two nails in your front tires, which caused the Plaintiff's suspension to fail and then the power steering to fail".  The Plaintiff, who has owned multiple vehicles, said "that did not sound right but you're a professional".  The Plaintiff also told the service member that the suspension had not failed in the vehicle since it was not low to the ground.  He said he needed permission to fix the tires (not under warranty) and he would repair the suspension and steering issue (under warranty). Permission was given to make the repairs.  Plaintiff picked up the 2015 Impala around noon on September 12, 2016.  The Plaintiff was **only told to keep an eye on the tire pressure, and everything would be ok. [Exhibit B]** The service member did not mention anything about known steering failures in the 2015 Chevy Impala or any General Motors vehicles.

17.   On September 14, 2016, Plaintiff was driving the recently repaired 2015 Impala and Power Steering Failure message appeared again.  It took the Plaintiff 10 minutes to move and maneuver herself to back the vehicle out of the middle of the street.  While trying to back up the car, Plaintiff's arm was twisted by the steering wheel.   September 15, 2016 the Plaintiff brought the vehicle back to H & L Chevrolet and asked them if they were trying to kill her. They immediately rushed the Plaintiff in a private area and asked what was wrong.  The Plaintiff explained to the Service Manager that she was there on September 12, 2016 for the same issue and was only told that the nails in the tire caused her steering to fail.  The Plaintiff was given a loaner vehicle and a service member assisted her to the loaner vehicle with her belongings

3

since she was feeling pain in her shoulder.  The service member told the Plaintiff that she was lucky that she was not driving a bigger SUV or TRUCK because the steering fails on those vehicles also.  The Plaintiff was shocked at this comment.

18.    On September 15, 2016, the Plaintiff contacted General Motors Corporate office regarding the issue she was having with 2015 Impala and the pain she had in her shoulder. General Motors instructed H & L Chevrolet to replace the Power Steering Rack and the Plaintiff picked up the 2015 Impala on September 21, 2016. **[Exhibit C]**

19.    On September 15, 2016, Plaintiff woke up with pain in her right shoulder.  Plaintiff is right-handed and used her right hand to drive.  On September 16, 2016, Plaintiff went to go to Orthopedic Associates of Stamford since the pain has decreased.  Plaintiff explained to Dr. Joseph M. D'Amico, MD. the issue and he ordered an in-office x-ray.  Initial x-rays were within normal limits for her age.  He started Plaintiff on conservative treatment program including a cortisone injection under ultrasound guidance.  She initially showed mild improvement following the cortisone injection and was seen one week for follow-up.  The pain had not gone away upon the Plaintiff's next office visit.  He added a two-week course of Relafen 500 mgs twice a day and an MRI was ordered.  The results from the MRI showed a partial rotator cuff tear as well as Impingement syndrome and Plaintiff continued on a physical therapy program and conservative management.  Physical therapy continued for about two and half months with no improvement and Plaintiff was referred to Dr. Marc Silver for evaluation for an arthroscopic subacromial decompression.  Dr. Marc Silver performed arthroscopic subacromial decompression with repair of her partial cuff tear on December 27, 2016.

20.    Plaintiff continued with physical therapy for months but the pain did not subside.  Plaintiff developed a substance abuse problem and started to self-medicate herself with street drugs. Plaintiff was not able to properly care for herself, her family and suffered loss of consortium with spouse. Plaintiff continues to suffer emotionally, mentally, physically and financially daily.

21.   Plaintiff was in contact with General Motors since there was a claim opened because of the injury.  Plaintiff explained to General Motors that she no longer wanted a vehicle that caused her this devastating injury.  Plaintiff was told to contact ACAR Leasing. Plaintiff suffered emotionally, mentally, physically and financially and General Motors offered to settle this matter for nominal amount which the Plaintiff rejected and told them she intended to sue.

22.   Plaintiff contacted ACAR Leasing customer service and explained to them that she no longer wanted a vehicle which inflicted emotional and financial pain on her.  Plaintiff asked ACAR Leasing to release her out of the Lease Agreement with a new vehicle until her lease term was up.  ACAR Leasing continuously refused and never investigated my claim.

23.   Plaintiff continued to make monthly payments on the 2015 Impala because she did not want her, and her husband's credit ruined causing her even more financial and emotional pain and distress.  She called ACAR Leasing monthly reminding them that she no longer enjoys quiet enjoyment with the 2015 Impala and wanted to be put in another vehicle until the end of her lease.  Plaintiff's husband drove the vehicle most of the time.  Plaintiff was told she can drop the vehicle off at the dealer.  Plaintiff asked what she and her husband was supposed to drive, they did not care.  Plaintiff filed a complaint with ACAR Leasing through their website under Contact Us – Complaints and to this date have not received a response.

24.   Plaintiff continued to pay for 2015 Impala until September 2017 believing this would get someone's attention.  Plaintiff explained to ACAR Leasing that she just could no longer look at a vehicle that caused her such a devastating injury, mental anguish and financial harm.  Plaintiff explained to ACAR Leasing that it was like looking at the car was causing her mental and emotional abuse and that she had been complaining for months with no one investigating her claim.  ACAR Leasing started to make harassing phone calls to Plaintiff on cell phone and work phone. Plaintiff told ACAR Leasing that she was not allowed to receive debt collection calls at her place of employment, but the calls continued to her work phone and the main operators phone which calls were transferred to Plaintiff's work desk phone. ACAR Leasing continues to

send correspondences and/or statements to Plaintiff requesting settlement and or payment of debt even though Plaintiff has asked ACAR Leasing to stop contacting her regarding this debt and she does not owe the debt since she was leased a defective vehicle that cause her injury.

25.   On December 18, 2017, the 2015 Impala was repossessed causing even more financial harm and embarrassment to Plaintiff.  On December 19, 2017, Plaintiff immediately sent an email to Defendants General Motors and ACAR Leasing letting them know her intentions to sue and to retain all materials in connection with this matter.  Defendant General Motors was aware of and acknowledged a previous complaint the Plaintiff filed against General Motors with the Michigan Consumer Protective Division.  Defendant General Motors legal counsel, Katherine H. Moor sent a letter dated December 27, 2017 to the Michigan Consumer Division regarding Plaintiff's complaint and stated upon receipt she sent a communication to ACAR Leasing addressing Plaintiff's claims relating to vehicle payments and access to the 2015 Impala. General Motors and ACAR Leasing knew or should have known to preserve relevant evidence related to this matter since it was reasonably foreseeable that a lawsuit would be filed and the pending complaint with General Motors and the Michigan Consumer Protective Division should have trigged preservation.

26.   Repossession of Plaintiff's 2015 Impala and failure to preserve relevant evidence has caused Plaintiff not to obtain/maintain legal representation since she is in no longer possession of the vehicle.  Plaintiff has asked Defendant ACAR Leasing for location of vehicle and have not received a response.

27.   Plaintiff has asked ACAR Leasing to stop reporting the vehicle as a repossession and late payments to the credit bureaus and update the account as in dispute.  ACAR Leasing continue to report inaccurate information to the credit bureaus.

28.   Pursuant to lease agreement dated August 10, 2015, Plaintiff initiated an Arbitration claim with all Defendants.  Plaintiff could not pursue arbitration because Defendants ACAR Leasing and Richards Chevrolet could not bring other defendants to the table.

**FIRST CAUSE OF ACTION**
<u>**PRODUCT LIABILITY AGAINST GENERAL MOTORS LLC**</u>

29.  Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

30.  The Defendant General Motors is in the business of designing, assembling, manufacturing, distributing, repairing, selling and/or supplying motor vehicles, such as the 2015 Impala operated by Plaintiff Debbi Cotterell.  An automobile's ability to respond to driver is one of the most critical components of vehicle control, stability and safety.  The steering wheel is the driver's sole source of maneuvering and directing the vehicle based on the driver input.

31.   The 2015 Impala was expected to and did reach end users, including the Plaintiff, without substantial change in the condition in which it was designed, assembled, manufactured, distributed, sold and/or supplied by the General Motors LLC.

32.   The 2015 Impala was distributed, sold and/or supplied by the General Motors in a defective condition for the reasons set for below.

33.   The 2015 Impala was defective and unreasonably dangerous when it entered the stream of commerce and used by the Plaintiff because it was dangerous to an extent beyond that which would be contemplated by the ordinary consumer.  At no time did the Plaintiff have a reason to believe that the Product was in a condition not suitable for its proper and intended use.

34.   The Plaintiff was not able to discover, nor could she have discovered through the exercise of reasonable care, the defective nature of the 2015 Impala.  Further, the Plaintiff reasonably could not have known that the General Motors had designed, developed, manufactured, and sold the 2015 Impala in such a way as to increase risk of harm or injury to the Plaintiff's use of the 2015 Impala.

35.   General Motors, their agents, servants and/or employees are liable and legally responsible to the Plaintiff for her injuries and damages pursuant to Connecticut General Statues § 52-572 *et seq.* and part of this action is brought as a "product liability claim" for injuries

7

proximately caused by the acts and/or omissions of General Motors, their agents, apparent agents, workmen, contractors, employees and/or officers, acting within the course and scope of their employment.

36.   The injuries and damages to the Plaintiff, as aforesaid, were directly and proximately caused by the defective product of General Motors by and through their agents, servants, workmen, contractors and/or employees acting within the course and scope of their employment, in one or more of the following ways, by:

a. Designing, assembling, manufacturing, selling, supplying, and distributing a vehicle in a defective condition;

b.  Designing, assembling, manufacturing, selling, supplying, and distributing a product that was unreasonably dangerous to user;

c.  Designing, assembling, manufacturing, selling, supplying, and distributing a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

d.  Designing, assembling, manufacturing, selling, supplying, and distributing a product without steering defect;

e.  Failed to adequately and properly test said product after its design and/or assembly under reasonably foreseeable circumstance;

f.  Failed to recall the vehicle upon know defect; and

g.  Failed to warn Plaintiff of defect feature when they knew or should have known that it was reasonable to do so.

37.   At all relevant times, the 2015 Impala was used and employed for the purpose for which it was designed and manufactured and was used in a foreseeable manner.

38.   As a direct and proximate result of General Motors' conduct, Plaintiff was caused to sustain severe and permanent injuries including, but not limited to, partial rotator cuff tear, scaring to her right shoulder, emotional, mental, and financial injuries.

39.   In all likelihood, the Plaintiff's injuries are permanent in nature and will require additional medical care in the future.  In addition, Plaintiff has suffered and will in the future continue to suffer great physical, mental and financial pain and has been and will in the future be unable to participate in many of the activities in which she engaged prior to said incidents.

40.  As a further direct and proximate result of the General Motors' conduct, the Plaintiff was and is required to spend various sums of money for medical care, treatment, drugs and devices necessitate by said injuries and will be obligated to spend further additional sums in the future for like services, all to her loss and damage.

41.   As a further direct and proximate result of General Motors' conduct, the Plaintiff has been unable to enjoy many of the social and recreational activities to the extent she formerly was able. Plaintiff has not been able to properly care for herself, her family and suffered loss of consortium with spouse.

42.   At all times mentioned herein, the Plaintiff was gainfully employed and as a further result of said incident the injuries resulting therefrom, the Plaintiff lost time from her employment and thereby suffered economic loss in the form of past and future lost wages.

## SECOND CAUSE OF ACTION
<u>**FRAUD AGAINST GENERAL MOTORS LLC,  RICHARD CHEVROLET, INC., AND H & L CHEVROLET, INC.**</u>

43.   The Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth therein.

44.   The Defendants General Motors, Richard Chevrolet, Inc. and H & L Chevrolet, Inc. were under a duty and failed to discharge its duty to exercise reasonable care to disclose to the Plaintiff and other consumers the defective nature and risks that the 2015 Impala can cause severe and permanent injuries, of which they had special knowledge not available to the Plaintiff or other consumers, and as to which they made affirmative representations in violation of all applicable laws, and concealed material facts relating to the defective nature and risks of the

2015 Impala, which were peculiarly within their knowledge, knowing that the Plaintiff and other consumers would rely on the presumption that no such facts exist.

45.   The Defendants General Motors, Richard Chevrolet, and H & L Chevrolet knew that the 2015 Impala Steering defect can cause severe and permanent injuries.  The Defendants General Motors, Richard Chevrolet, and H & L Chevrolet had actual knowledge at the time of sale and repair of the 2015 Impala to Plaintiff that it created a risk of serious bodily injury to users or others as stated in the National Highway Traffic Safety Administration ("NHTSA") recall notice of the 2014 Chevrolet Impala. **[Exhibit D]**

46.   The Plaintiff believes and based thereon alleges that the Defendants General Motors, Richard Chevrolet, and H & L Chevrolet acquired their knowledge of the Steering Defect in 2015 Impala, prior year models and other vehicles prior to 2008 through sources not available to Plaintiff, including not limited to pre-release testing data and early consumer complaints to Defendants General Motors, Richard Chevrolet, and H & L Chevrolet about the Steering Defects in vehicles.  Other reliable source includes, without limitation, Steering recall on the 2014 Chevrolet Impala, dealer repair orders, complaints reported to NHTSA, online news articles, online forums and to General Motors. **[Exhibit E]**
General Motors and Richard Chevrolet systematically continue to deceive the public about the safety and reliability of the vehicles they market for sale.

47.   The Plaintiff believes Defendants General Motors, Richard Chevrolet, and H & L Chevrolet have been aware of Steering Defect prior to 2015 Impala being sold, financed and/or brought to dealer for repair.

48.   At all times during dealings between the Defendants and the Plaintiff, the Defendants General Motors, Richard Chevrolet, and H & L Chevrolet knowingly and recklessly omitted and concealed information peculiarly within their knowledge to the Plaintiff and to the general public knowing that the general public and the Plaintiff would rely on the presumption that the dangers did not exist.

49.   The Defendants General Motors, Richard Chevrolet, and H & L Chevrolet actively concealed from the Plaintiff and the general public:

      a.  the failure rate of the 2015 Impala;

      b.  the possibility of failure of the 2015 Impala;

      c.  that the 2015 Impala was defective for its intended use; and

      d.  the possible injuries that are caused by failure of the 2015 Impala.

50.   The Defendants General Motors, Richard Chevrolet, and H & L Chevrolet misrepresented that the product was safe and effective for its intended uses by affirmative misrepresentation and/or active concealment and omission of material facts regarding the safety of the of the 2015 Impala and by their course of conscious and/or intentional conduct succeeded in repairing, selling and marketing dangerous, defective, and ineffective products to be used by the Plaintiff.  The General Motors, Richard Chevrolet, and H & L Chevrolet intentionally omitted, concealed and/or suppressed this information from consumers, including the Plaintiff, in order to avoid losses in sales to consumers and market share to its major competitors.

51.   The Defendants General Motors, Richard Chevrolet, and H & L Chevrolet engaged in fraud by deliberately and affirmatively concealing and failing to disclose the defects of the 2015 Impala to the Plaintiff and the general public, and by concealing scientific data that showed increased risk of injury to the Plaintiff and the general public.

52.   The Defendants General Motors, Richard Chevrolet, and H & L Chevrolet knew or should have known that their representations and omission regarding the safety of the 2015 Impala were, in fact, false and/or misleading and actively made such representations and omissions with the intent, design, and purpose that the Plaintiff and others rely on these representations leading to the use of the 2015 Impala.

53.   At all times herein, the Plaintiff was unaware of the dangers of the 2015 Impala and was reasonably misled by General Motors, Richard Chevrolet, and H & L Chevrolet omission of information about this danger.

54.   The Plaintiff justifiably relied upon to her detriment and/or was induced by General Motors, Richard Chevrolet and H & L Chevrolet active concealment regarding the safety of the 2015 Impala, in part, because at no time did the Plaintiff have the knowledge or expertise necessary to independently evaluate the safety of the 2015 Impala.

55.   General Motors and Richard Chevrolet misrepresentation, concealment, suppression, and omission were made willfully, wantonly, uniformly, deliberately, and/or recklessly in order to induce the Plaintiff and others to purchase the 2015 Impala, the Plaintiff did reasonably and justifiably rely upon the material misrepresentations and omissions made by the General Motors, Richard Chevrolet, and H & L Chevrolet about the 2015 Impala when agreeing to purchase and/or continue to use the 2015 Impala.

56.   As a direct and proximate result of the General Motors, Richard Chevrolet, and H & L Chevrolet false representations and/or active concealment of material facts regarding the safety and efficacy of the 2015 Impala, Plaintiff was caused to sustain severe and permanent injuries including, but not limited to partial rotator cuff tear, scaring to her right shoulder, emotional, mental, and financial injuries.

57.   In all likelihood, the Plaintiff's injuries are permanent in nature and will require additional medical care in the future.  In addition, Plaintiff has suffered and will in the future continue to suffer great physical, mental and financial pain and has been and will in the future be unable to participate in many of the activities in which she engaged prior to said incidents.

58.   As a further direct and proximate result of the General Motors, Richard Chevrolet, and H & L Chevrolet conduct, the Plaintiff was and is required to spend various sums of money for medical care, treatment, drugs and devices necessitate by said injuries and will be obligated to spend further additional sums in the future for like services, all to her loss and damage.

59.   As a further direct and proximate result of the General Motors, Richard Chevrolet, and H & L Chevrolet conduct, the Plaintiff has been unable to enjoy many of the social and

recreational activities to the extent she formerly was able. Plaintiff has not been able to properly

care for herself, her family and suffered loss of consortium with spouse.

60.   At all times mentioned herein, the Plaintiff was gainfully employed and as a further result

of said incident the injuries resulting therefrom, the Plaintiff lost time from her employment and

thereby suffered economic loss in the form of past and future lost wages.

**THIRD CAUSE OF ACTION**
**VIOLATION OF CUPTA, C.G.S § 42-110b, et seq. AGAINST**
**GENERAL MOTORS LLC, RICHARD CHEVROLET, INC. AND**
**H & L CHEVROLET, INC.**

61.   The Plaintiff incorporates by reference each and every paragraph of this complaint as if

full set forth herein.

62.   General Motors, Richard Chevrolet, and H & L Chevrolet conduct, as aforesaid,

constituted and continues to constitute an unfair method of trade or deceptive act or practice in

the conduct of trade or commerce, in violation of the Connecticut Unfair Trade Practices Act,

Connecticut General Statutes § 42-110b, et seq.

63.   As a direct and proximate result of the General Motors, Richard Chevrolet, and H & L

Chevrolet false representations and/or active concealment of material facts regarding the safety

and efficacy of the 2015 Impala, Plaintiff was caused to sustain severe and permanent injuries

including, but not limited to partial rotator cuff tear, scaring to her right shoulder, emotional,

mental, and financial injuries.

64.   In all likelihood, the Plaintiff's injuries are permanent in nature and will require additional

medical care in the future.  In addition, Plaintiff has suffered and will in the future continue to

suffer great physical, mental and financial pain and has been and will in the future be unable to

participate in many of the activities in which she engaged prior to said incidents.

65.  As a further direct and proximate result of the General Motors, Richard Chevrolet,  and H

& L Chevrolet conduct, the Plaintiff was and is required to spend various sums of money for

medical care, treatment, drugs and devices necessitate by said injuries and will be obligated to spend further additional sums in the future for like services, all to her loss and damage.

66.   As a further direct and proximate result of the General Motors, Richard Chevrolet, and H & L Chevrolet conduct, the Plaintiff has been unable to enjoy many of the social and recreational activities to the extent she formerly was able. Plaintiff has not been able to properly care for herself, her family and suffered loss of consortium with spouse.

67.   At all times mentioned herein, the Plaintiff was gainfully employed and as a further result of said incident the injuries resulting therefrom, the Plaintiff lost time from her employment and thereby suffered economic loss in the form of past and future lost wages.


### FOURTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AGAINST GENERAL MOTORS LLC, RICHARD CHEVROLET, INC., and ACAR LEASING

68.   The Plaintiff incorporates by reference each and every paragraph of this complaint as if full set forth herein.

69.   A warranty that the 2015 Impala was in merchantable condition at the time of sale was implied by the Contract by operation of Conn. Gen. Stat. § 42a-2-314.

70.   Defendants General Motors, ACAR Leasing, and Richard Chevrolet impliedly warranted to Plaintiff that the 2015 Impala and its steering system which it sold passed without objection in the trade, was fit and merchantable for its ordinary used, and was not otherwise injurious to consumers.

71.   Because of the undisclosed defective nature of the 2015 Impala during ordinary use, the steering system could not pass without objection in the trade, and was unsafe, unmerchantable and unfit for the ordinary use when sold. General Motors, ACAR Leasing, and Richard Chevrolet intentional concealed the defective nature of the steering system from Plaintiff.

Furthermore, the defective nature of the steering system could not be discovered by exercise of due diligence and responsible care.

72.  As a direct and proximate result of General Motors, ACAR Leasing, and Richard Chevrolet, breach of implied warranty, Plaintiff has suffered physical, actual damages and loss of use of said vehicle and demand judgement for damages.


### FIFTH CAUSE OF ACTION
### NEGLIGENT REPAIR AND FAILURE TO WARN H & L CHEVROLET, INC., AND GENERAL MOTORS

73.  The Plaintiff incorporates by reference each and every paragraph of this complaint as if full set forth herein.

74.  Both prior to and subsequent to the sale of the 2015 Impala, General Motors and Richard Chevrolet designed and/or marketed the vehicle by heavily promoting its supposed safety advantages, yet never provided consumers with warnings about the unreasonably dangerous defect in the 2015 Impala that caused the vehicle to suddenly lose steering during normal driving conditions.

75. Upon the steering system failure on September 11, 2016, Plaintiff brought the 2015 Impala to H & L Chevrolet for repair. Plaintiff tendered the 2015 Impala to H & L Chevrolet for repairs of the defective conditions covered under the expressed and implied warranties.

76. Plaintiff was informed and believed, and thereupon alleges, that H &L Chevrolet attempted the repair of the 2015 Impala pursuant to their obligations under the warranty.  H & L Chevrolet owed a duty of care to Plaintiff to perform the repairs on the 2015 Impala in a good and workmanlike manner.  Further, H & L Chevrolet has a high duty to detect and correct defects when consumers such as Plaintiff is subject to the warranty repair system initiated by General Motors.  H & L Chevrolet and General Motors breached the duty to Plaintiff to correct the known steering issue and/or warn Plaintiff regarding the steering issue.

77.  H & L Chevrolet attempted repair of Plaintiff's 2015 Impala was done so negligently, carelessly, and recklessly as to substantially impair the vehicle's use, value and safety in its operation and use.  Upon pick up of 2015 Impala on September 12, 2016, H & L represented to Plaintiff that the vehicle was safe to drive and that the repairs were completed, and the Plaintiff replied upon the statements by H & L Chevrolet that the steering had failed because there were two nails in the tires which caused the suspension to fail which caused the power steering to fail.  H & L Chevrolet failed to warn Plaintiff of the defective nature of vehicle and/or probably defective nature of vehicle.

78.  General Motors and H & L Chevrolet knew of the defective steering system in the 2015 Impala and other vehicles by consumer complaints, dealer repair orders, complaints reported to NHTSA, online news articles, online forums.

79.  Such negligent failure to adequately warn directly and proximately caused Plaintiff's permanent injuries

80.  As a direct and proximate result of H & L Chevrolet and General Motors negligent failure to repair the 2015 Impala adequately or warn the Plaintiff of defective nature or probably defective nature Plaintiff has suffered as direct and proximate result of Defendants' negligence exceeding $100,000.

## SIXTH CAUSE OF ACTION
## BREACH OF CONTRACT; MISREPRESENTATION OF CONTRACT; FRAUDULENT AND DECEPTIVE CONTRACT

81.  The Plaintiff incorporates by reference each and every paragraph of this complaint as if full set forth herein.

82. On August 10, 2015, Plaintiff entered into a Closed End Motor Vehicle Lease (with ARBITRATION PROVISION) by and between Richard Chevrolet and ACAR Leasing.  The agreement's arbitration provision states either **YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY**

**TRIAL.** The arbitration provision also states; ***Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, lease or conditions of this Vehicle, thus lease or any resulting transaction or relationship (including any such relationship with third parties who did not sign this Lease) shall, at your election, be resolved by neutral, binding arbitration and not by a court action.***

83. On or about February 20, 2019, Plaintiff paid and initiated a formal arbitration matter with the American Arbitration Association ("AAA"). On March 15, 2019, Richard Chevrolet, ACAR Leasing and Plaintiff agreed to mutually dismiss the arbitration matter since Richard Chevrolet and ACAR Leasing could not get General Motors and H&L Chevrolet to arbitration the matter **[Exhibit F].**

84. Upon Plaintiff's review and signing of the lease agreement with the finance manager at Richard Chevrolet, plaintiff believed that she had right to file an arbitration claim for Any Claim, but also any claim or dispute which arose out of or related to the credit application, lease or conditions of the Vehicle, thus lease or any resulting transaction or relationship. The lease agreement clearly states that Plaintiff may file an arbitration dispute since the dispute involves condition of vehicle. A reasonable person would interrupt General Motors and H & L Chevrolet as a party to an arbitration claim since Plaintiff had a resulting transaction or relationship. Also, both H & L Chevrolet and General Motors would be considered a *third party who did not sign this lease* because General Motors is the maker of the vehicle and H & L Chevrolet is a General Motors Dealer who repairs vehicle under the warranty program.

85. The Closed End Motor Vehicle Lease (with ARBITRATION PROVISION) the Plaintiff entered into is a fraudulent and misleading contract. Under Arbitration on the AAA website, *"Arbitration—the out-of-court resolution of a dispute between parties to a contract, decided by an impartial third party (the arbitrator)—is faster and more cost effective than litigation."* Plaintiff

17

filed her dispute with the AAA with the understanding that her claim would be resolved by an arbitrator according to the terms in the Arbitration Provision in the contract.

86.  The language; [*Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, lease or conditions of this Vehicle, thus lease or any resulting transaction or relationship (including any such relationship with third parties who did not sign this Lease) shall, at your election, be resolved by neutral, binding arbitration and not by a court action]* in the Closed End Motor Vehicle Lease (with ARBITRATION PROVISION) is deceptive and misleading to consumers.  A reasonable consumer would consider a manufacturer, distributor, repairer of a vehicle as a "*third parties who did not sign this Lease*" a subject to an Arbitration demand if named since the arbitration agreement states, "conditions of the Vehicle." and "any disputes".  To be clear, the third parties are to the General Motors and manufacturer and distributor of the 2015 Impala and H&L Chevrolet a General Motors dealership who repaired.

87.  Defendants, Richard Chevrolet and ACAR Leasing admitted they could not bring Defendants, General Motors and H&L Chevrolet to arbitration even though the agreement states Plaintiff may choose to have any dispute decided by Arbitration.

88.  Defendants Richard Chevrolet and ACAR Leasing breached the contract by not getting third parties to arbitrate this matter.  Richard Chevrolet and ACAR Leasing misrepresentation of contract; fraudulent and deceptive language in the contract has caused Plaintiff to stain significant mental and financial damages.  Plaintiff is requesting to the court void and nullify contract and return monies paid to ACAR Leasing and Richard Chevrolet, value of trade-in-vehicle and removal/and or updating of misleading, deceptive and fraudulent language in contract.

## SEVENTH CAUSE OF ACTION
## <u>FRAUD AND NEGLIGENCE AGAINST ACAR LEASING</u>

89.  The Plaintiff incorporates by reference each and every paragraph of this complaint as if full set forth herein.

90. On December 18, 2017, the 2015 Impala was repossessed causing even more financial harm and embarrassment to Plaintiff.  On December 19, 2017, Plaintiff immediately sent an email to Defendants General Motors and ACAR Leasing with her intention to sue and to retain all materials in connection with this matter.  Defendant General Motors legal counsel, Katherine H. Moor sent a letter dated December 27, 2017 to the Michigan Consumer Division regarding Plaintiff's complaint and stated upon receipt she sent a communication to ACAR Leasing addressing Plaintiff's claims relating to vehicle payments and access to the 2015 Impala. ACAR Leasing knew or should have known to preserve relevant evidence related to this matter since it was reasonably foreseeable that a lawsuit would be filed and the pending complaint.

91.  ACAR Leasing preservation was triggered because they knew litigation was "reasonably anticipated" by the numerous complaints the Plaintiff contacted the company about, the email sent by Plaintiff the day after repossession and the communication from General Motors' attorney.  ACAR Leasing failure to preserve evidence which is a material fact in an anticipated lawsuit has caused Plaintiff irreparable harm.

92.  The Plaintiff is requesting sanctions in the excess of $250,000 against ACAR Leasing for spoliation of evidence.

## EIGHT CAUSE OF ACTION
## <u>FAIR CREDIT REPORTING ACT VIOLATIONS("FCRA") AGAINST ACAR LEASING 15 U.S.C. § 1681, ET SEQ. ("FCRA")</u>

93.   The Plaintiff incorporates by reference each and every paragraph of this complaint as if full set forth herein.

94.  The Plaintiff is a "person", "individual", and "consumer" as defined by the FCRA.

95.  ACAR Leasing is a "person" and a "furnisher of credit information as defined by the FCRA.

96.  This matter is brought in this Court along with Plaintiff's other claims pursuant to 15 U.S.C. § 1681p.

97.  Defendant ACAR Leasing reported this account in good standing "On Time" until October 2017. **[Exhibit G]**

98.  The Defendant ACAR Leasing repossessed Plaintiff's 2015 Impala knowing said vehicle had been in dispute, defective and caused injury to Plaintiff. Defendant started reporting 2015 Impala repossession on or after December 2017.

99.  Plaintiff has asked ACAR Leasing directly and through their attorney to stop reporting subject tradeline for 2015 Impala as a repossession and update the account as in dispute. ACAR Leasing "repossession" reporting does not tell an accurate picture of what transpired with the consumer debt. ACAR Leasing has refused to update the 2015 Impala tradeline as in dispute.

100.  ACAR Leasing continues to harm Plaintiff by publishing inaccurate information regarding creditworthiness.

101.  The Defendant ACAR Leasing conduct of not investigating and correcting the improper, inaccurate negative derogatory credit information that it is reporting about the Plaintiff's account is negligent or willful and it failed to follow reasonable procedures to ensure the maximum possible accuracy of information of in a consumer report.

102.  Defendant ACAR Leasing refusal to update and continued inaccurate reporting of the 2015 Impala tradeline has caused the Plaintiff additional financial, emotional, and mental injuries and economic losses to Plaintiff and is in violation of the FCRA.


## NINTH CAUSE OF ACTION
## <u>CREDITOR COLLECTION PRACTICES ACT AGAINST ACAR LEASING</u>

103.   The Plaintiff incorporates by reference each and every paragraph of this complaint as if full set forth herein.

104.   ACAR Leasing violated the Credit Collection Practices Act, Conn. Gen. Stat. § 36a-645 et seq. ("CCPA"), by failing to conduct an investigation into Plaintiff's dispute regarding the claimed debt.  At all times Defendant ACAR Leasing engaged in collection and repossession activates described herein.

105.   At all times relevant hereto Defendant ACAR Leasing was attempting to collect an alleged debt which was incurred for personal, family or household purposes and is a "debt" as defined by 15 U.S.C. § 1692a(5).

106.   ACAR Leasing engaged in unlawful practices by continuing to harass Plaintiff by attempting to collect debt which plaintiff has disputed.  Plaintiff has asked ACAR Leasing to stop sending communications to her regarding a debt that she does not believe she owes and has disputed.  ACAR Leasing continues to send monthly correspondences attempting to collect debt and sending correspondences requesting settlement of debt which Plaintiff has disputed or is involved in a dispute. [**Exhibit H**]

107.  ACAR Leasing continued harassment by unfairly and unconscionably collecting or attempting to collect the debt by its action described above is in violation of CCPA.  Plaintiff is requesting all damages resulting in her economical and emotional damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff pray that the Court enter judgement against General Motor, ACAR Leasing, Richard Chevrolet, and H & L Chevrolet:

1.  Fair, just and reasonable money damages;

2.  Punitive damages;

3.  Lost of Use of the vehicle

4.  Expenses and costs of this action;

5.  Double and triple damages as allowed by law; and

6.  Any other relief and equity as deem appropriate.

**DEMAND FOR JURY TRIAL**

**THE PLAINTIFF,**

By: _Debbi Cotterell_

Debbi Cotterell, Pro Se Plaintiff
17 Renwick Street, Unit C
Stamford, CT 06902
Phone: (203) 943-9953
Email: debbisimms@gmail.com

22

# EXHIBIT A

## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEBBI COTTERELL, | |
| Plaintiff, | No. 3:19-cv-822 (MPS) |
| v. | |
| GENERAL MOTORS LLC; GENERAL MOTORS FINANCIAL COMPANY, INC. d/b/a GM FINANCIAL LEASING; RICHARD CHEVROLET, INC.; and H & L CHEVROLET, INC., | December 18, 2019 |
| Defendants. | |

### RULING ON MOTIONS TO DISMISS

*Pro se* plaintiff Debbi Cotterell brought this action on May 29, 2019 against General Motors LLC ("GM"); ACAR Leasing Ltd. d/b/a GM Financial Leasing[1] ("GM Financial"); Richard Chevrolet, Inc. ("Richard Chevrolet"); and H & L Chevrolet, Inc. ("H & L") (together, "Defendants"). ECF No. 1. She filed an amended complaint against these four Defendants on July 19, 2019, alleging that they leased her a defective vehicle, which caused a power steering failure in September 2016 that injured her shoulder, and that they failed to repair the problem, refused to provide a different vehicle for the remainder of her lease, unfairly repossessed the vehicle when she stopped making lease payments, and then misleadingly reported the repossession to credit reporting agencies. Am. Compl., ECF No. 29. Her Amended Complaint alleges product liability, negligence, fraud, breach of express warranty, breach of implied warranty of merchantability, lender liability, and violations of state and federal statutes.

---

[1] Ms. Cotterell incorrectly named "General Motors Financial Company, Inc. d/b/a GM Financial Leasing" as a defendant in her action. ECF Nos. 1, 29. GM Financial has stated in its filings that the entity's proper name is ACAR Leasing Ltd. d/b/a GM Financial Leasing. ECF No. 32 at 1 n.1.

plead diversity jurisdiction, she may bring a CCPA claim by itself against GM Financial in this court.

## IV.   CONCLUSION

For the reasons stated above, the Defendants' motions to dismiss, ECF Nos. 31, 34, 35, 39, are GRANTED. Ms. Cotterell's FDCPA claim is dismissed with prejudice, and her FCRA, MMWA, and state law claims are DISMISSED without prejudice.

When evaluating *pro se* complaints, "the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). However, if repleading a claim would be futile, the court should not grant leave to amend. *Id.*; *Hunt v. Alliance N. Am. Gov't Income Trust*, 159 F.3d 723, 728 (2d Cir. 1998). Here, Ms. Cotterell already had the opportunity to amend her complaint following the Defendants' original motions to dismiss, *see* Order, ECF No. 26 (allowing plaintiff to "file an amended complaint that addresses the defects identified in the Defendants' motions to dismiss"), although those original motions to dismiss focused solely on the lack of diversity jurisdiction, and not on the more substantive defects in Ms. Cotterell's federal statutory claims. ECF Nos. 15, 17, 20, 24. Nonetheless, I find that repleading her FDCPA claim and repleading her MMWA claim in federal court would be futile, since even a "liberal reading of the complaint" does not suggest that GM Financial is a "debt collector" under the FDCPA (and Ms. Cotterell does not meaningfully oppose dismissal of her FDCPA claim), or that Ms. Cotterell could meet the $50,000 jurisdictional minimum under the MMWA, even with better pleading. *See Cuoco*, 222 F.3d at 112 (denying leave to replead when "[t]he problem with [plaintiff's] causes of action is substantive [and] better pleading will not cure it").

26

While I do not grant leave to replead the FDCPA claim or the MMWA claim in this court, I do grant Ms. Cotterell leave to amend her FCRA claim against GM Financial. If she wishes to file such an amended complaint in this Court, she must do so within thirty days. The amended complaint must be limited to her FCRA claim against GM Financial (plus any CCPA claim against GM Financial, as discussed above). She is also free to bring her FCRA claim, her MMWA claim, and her state law claims in state court.

IT IS SO ORDERED.

                                    /s/
                         Michael P. Shea, U.S.D.J.


Dated:  Hartford, Connecticut
        December 18, 2019

# EXHIBIT B

Make Friends With

# h&L CHEVROLET

The Little Place With The Big Deals!

1416 Post Road, Darien, CT 06820 • FAX (203) 655-9968

**SALES**
(203) 655-2551

**SERVICE**
(203) 655-8264

**PARTS**
(203) 655-4991

| CUSTOMER NO. 22848 | ADVISOR RICHARD 22370 | | TAG NO. | INVOICE DATE 09/12/16 | INVOICE NO. CVCS185103 |
|---|---|---|---|---|---|
| DEBB COTTERELL | LABOR RATE 124.00 | LICENSE NO. | MILEAGE 34,507 | COLOR BLACK/ | STOCK NO |
| 17 RENWICK ST #C STAMFORD CT, CT | YEAR / MAKE / MODEL 15/CHEVROLET/IMPALA/4DR SDN LT | | | DELIVERY DATE | DELIVERY MILES |
| | VEHICLE I.D. NO. 2 G 1 1 2 5 S 3 0 F 9 2 5 1 5 0 1 | | | SELLING DEALER NO. | PRODUCTION DATE |
| | F.T.E NO. | | P.O. NO. | R.O DATE 09/12/16 | |
| RESIDENCE PHONE 203-943-9955 | BUSINESS PHONE | COMMENTS | | | |

MO: 34509

```
JOB#  1 CHARGES-------------------------------------------------

LABOR-----------------------------------------------------------
#  1 45CVZ01      STEERING CONCERN     HOURS:  0.30 TECH(S):14304       WARRANTY
                NO POWER STEERING
                CODE C055C FOLLOW DOC. 3652690 CHECK FOR BINDING / HIGH
                EFFORT.
                TEST CIRCUIT 1142 RED/YELLOW GOOD F3UB FUSE GOOD. DISCONNECT
                BATTERY DO LOGIC LOCK UO. OK. CLEAR CODES

JOB#  1 TOTALS-------------------------------------------------

JOB#  2 CHARGES-------------  JOB#  1 JOURNAL PREFIX CVCS  JOB#  1 TOTAL      0.00

LABOR-----------------------------------------------------------
#  2 46CVZ01      WHEEL/TIRE CONCERN   HOURS:      TECH(S):14304           60.00
                CHECK TIRE PRESSURES
                FOUND NAILS I N 2 FRONT TIRES.
                PLUG TIRES

JOB#  2 TOTALS-------------------------------------------------
                                          LABOR              60.00
                    JOB#  2 JOURNAL PREFIX CVCS  JOB#  2 TOTAL    60.00

MISC------CODE-------DESCRIPTION----------------CONTROL NO--------
JOB # A      HAZ  HAZARDOUS WASTE                                   3.00
                                          TOTAL - MISC        3.00

ESTIMATE--------------------------------------------------------
CUSTOMER HEREBY ACKNOWLEDGES RECEIVING
        ORIGINAL ESTIMATE OF     $0.00 (+TAX)

TOTALS----------------------------------------------------------
```

PLEASE NOTE!   YOU MAY RECEIVE A FOLLOW-UP SURVEY
FROM GENERAL MOTORS. THIS SURVEY IS OUR REPORT CARD.
IF FOR ANY REASON YOU CANNOT MARK "COMPLETELY SATISFIED".
PLEASE CONTACT OUR SERVICE MANAGER, ANDREW RANDALL
AT 203-655-8264.    THANK YOU FOR YOUR BUSINESS.

| | |
|---|---|
| TOTAL LABOR.... | 60.00 |
| TOTAL PARTS.... | 0.00 |
| TOTAL SUBLET... | 0.00 |
| TOTAL G.O.G.... | 0.00 |
| TOTAL MISC CHG. | 3.00 |
| TOTAL MISC DISC | 0.00 |
| TOTAL TAX...... | 4.00 |
| **TOTAL INVOICE $** | **67.00** |

CUSTOMER SIGNATURE

PAID  SEP 1 2 2016  By

PAGE 1 OF 1          CUSTOMER COPY          [ END OF INVOICE ]    11:01am

## SERVICE

Monday - Friday
7:00 am - 5:30 pm

Early Bird drop-off available

## PARTS

Monday - Friday
8:00 am - 5:00 pm

## SHOWROOM

Monday - Thursday
8:30 am - 7:00 pm

Friday 8:30 am - 6:00 pm
Saturday 9:00 am - 5:00 pm



**LIMITED WARRANTY:** We guar-
antee our service work on vehicles
for 12 months or 12,000 miles,
whichever comes first.

The selling dealer hereby expressly dis-
claims all warranties, either express or
implied, including any implied warranties of
merchantability or fitness for a particular
purpose, and neither assumes nor autho-
rizes any other person to assume for it any
liability in connection with the sale of this
part(s) and/or service. Buyer shall not be
entitled to recover from the selling dealer
any consequential damages, damages to
property, damages for loss of use, loss of
time, loss of profits, or income, or any other
incidental damages. In addition, expressly
excluded is any dealer liability for defects
pertaining to safety or performance by way
of strict liability, negligence or otherwise.

BUSINESS FORMS PLUS • MILFORD, CT (203) 882-0061 • FAX (203) 877-2397

# EXHIBIT C

**n'L4 CHEVROLET**

*The Little Place With The Big Deals!*

1416 Post Road, Darien, CT 06820 • FAX (203) 655-9968

| SALES | SERVICE | PARTS |
|---|---|---|
| (203) 655-2551 | (203) 655-8264 | (203) 655-4991 |

| CUSTOMER NO. 22848 | ADVISOR GLADYS ABAD 12461 | TAG NO. | INVOICE DATE 09/21/16 | INVOICE NO. CVCS185230 |
|---|---|---|---|---|
| DEBB COTTERELL 17 RENWICK ST #C STAMFORD CT, CT | LABOR RATE 124.00 | LICENSE NO. | MILEAGE 34,677 | COLOR BLACK/ | STOCK NO. |
| | YEAR / MAKE / MODEL 15/CHEVROLET/IMPALA/4DR SDN LT | | DELIVERY DATE | DELIVERY MILES |
| | VEHICLE I.D. NO. 2 G 1 1 2 5 S 3 0 F 9 2 5 1 5 0 1 | | SELLING DEALER NO. | PRODUCTION DATE |
| | F. T. E. NO. | P.O. NO. | R. O. DATE 09/15/16 | |
| RESIDENCE PHONE 203-943-9955 | BUSINESS PHONE | COMMENTS | | MO: 34679 |

JOB# 1 CHARGES-----------------------------------------

LABOR----------------------
J# 1 45GVZ01      STEERING CONCERN    HOURS: 5.10 TECH (S):14304      WARRANTY
C/S WHILE DRIVING STEERING NOTICE CAME UP ON DASH. STEERING
WHEEL BECAME STIFF.UNABLE TO STEER
VERIFIED CONCERN.CALLED TAC. CASE #8-2375575625.WAS TOLD TO
REPLACE STEERING GEAR.
INSTALLED POWER STEERING RACK.PROGRAMMED POWER STEERING
CONTROL MODULE.SENT VEHICLE OUT TO GET ALIGNED.ROAD TESTED
VEHICLE.GOOD.

PARTS------QTY---FP-NUMBER--------------DESCRIPTION-----------------UNIT PRICE-
        1    23297469          GEAR 6.508                    WARRANTY
       -1    23297469          CORE RETURN                   WARRANTY
                                        TOTAL - PARTS        0.00

SUBLET-----PO#--------VEND INV#-INV.DATE-DESCRIPTION----------------------------
        084368    55938520  09/20/16 ALIGNMENT              WARRANTY
                                        TOTAL - SUBLET       0.00

JOB# 1 TOTALS-----------------------------------------

                        JOB# 1 JOURNAL PREFIX CVCS  JOB# 1 TOTAL    0.00

JOB# 2 CHARGES-----------------------------------------

LABOR----------------------
J# 2 60GVZ       INTERIOR TRIM    HOURS: 0.50 TECH(S):14304      WARRANTY
C/S WHEN MOVING RIGHT FRONT SEAT UP.MOVES TO THE SIDE
VERIFIED CONCERN.FOUND CABLE OFF INSIDE TRACK.REMOVED RIGHT
FRONT SEAT,RE-INSTALLED CABLE TO SEAT TRACK AND THEN
RE-INSTALLED RF SEAT

JOB# 2 TOTALS-----------------------------------------

                        JOB# 2 JOURNAL PREFIX CVCS  JOB# 2 TOTAL    0.00

ESTIMATE------------------------------------------
CUSTOMER HEREBY ACKNOWLEDGES RECEIVING
        ORIGINAL ESTIMATE OF    $0.00 (+TAX)
TOTALS-----------------------------------------

PLEASE NOTE!   YOU MAY RECEIVE A FOLLOW-UP SURVEY
FROM GENERAL MOTORS. THIS SURVEY IS OUR REPORT CARD.
IF FOR ANY REASON YOU CANNOT MARK "COMPLETELY SATISFIED".
PLEASE CONTACT OUR SERVICE MANAGER, ANDREW RANDALL
AT 203-655-8264.   THANK YOU FOR YOUR BUSINESS.

| | |
|---|---|
| TOTAL LABOR.... | 0.00 |
| TOTAL PARTS.... | 0.00 |
| TOTAL SUBLET.... | 0.00 |
| TOTAL G.O.G.... | 0.00 |
| TOTAL MISC CHG. | 0.00 |
| TOTAL MISC DISC | 0.00 |
| TOTAL TAX...... | 0.00 |
| **TOTAL INVOICE $** | **0.00** |

CUSTOMER SIGNATURE

PAGE 1 OF 1              CUSTOMER COPY              [ END OF INVOICE ]   04:43pm

---

### SERVICE

Monday - Friday
7:00 am - 5:30 pm

Early Bird drop-off available

●

### PARTS

Monday - Friday
8:00 am - 5:00 pm

●

### SHOWROOM

Monday - Thursday
8:30 am - 7:00 pm

Friday 8:30 am - 6:00 pm
Saturday 9:00 am - 5:00 pm



LIMITED WARRANTY: We guarantee our service work on vehicles for 12 months or 12,000 miles, whichever comes first.

The selling dealer hereby expressly disclaims all warranties, either express or implied, including any implied warranties of merchantability or fitness for a particular purpose, and neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this part(s) and/or service. Buyer shall not be entitled to recover from the selling dealer any consequential damages, damages to property, damages for loss of use, loss of time, loss of profits, or income, or any other incidental damages. In addition, expressly excluded is any dealer liability for defects pertaining to safety or performance by way of strict liability, negligence or otherwise.

# EXHIBIT E



# NHTSA — Steering Problems
2015 CHEVROLET IMPALA (PAGE 1 OF 2)

**Crashes / Fires:**
1 / 1

**Injuries / Deaths:**
1 / 0

**Average Mileage:**
52,147 miles

**About These NHTSA Complaints:**
This data is from the NHTSA — the US gov't agency tasked with vehicle safety. Complaints are spread across multiple & redundant categories, & are not organized by problem.

So how do you find out what problems are occurring? For this NHTSA complaint data, the only way is to read through the comments below. Any duplicates or errors? It's not us.

## 2015 CHEVROLET IMPALA OWNER COMMENTS    (PAGE 1 OF 2)

**#28**    **Impala**    FEB 01
5 miles    **2020**
Going down the road I had a steering with care light pop up. And I had trouble controlling the vehicle. After turning the vehicle off for a couple minutes there is not problem. Currently I am terrified of driving the vehicle in the sense of loosing control or even my life.
- **Brandon, FL, USA**

**#27**    **Impala**    FEB 23
82,000 miles    **2020**
While driving down interstate steering assist disabled alarm came on. Vehicle basically impossible to steer !! took extreme amount of effort to turn wheel at all. Way beyond what a normal non electric steering car would take with power steering out. Very dangerous at highway speeds. Managed to get car off road without killing myself or anyone else. Towed to dealership. Steering gone. $3100 to replace. Ridiculous for a 4 year old car.
- **Williamsburg, VA, USA**

**#26**    **Impala**    FEB 03
56,800 miles    **2020**
Power steering failed while driving. The rack has to be replaced. It's a $3,000 repair on a 5 year old car with less than 60,000 miles
- **Coram, NY, USA**

**Impala**

# #25
169,000 miles

Jan 22
**2020**

Loss of power steering assist and a "service power steering" message. Loss started upon start-up in morning and continued thru 25 mile commute to work. Eight hours later condition was gone and all systems normal from start-up to return commute home. During loss of assist car was extremely difficult to steer.

- **Medina, OH, USA**


# #24    Impala
105,000 miles

Nov 20
**2019**

Leaving home going to the fuel station to get gas for my car. I pulled out of the gas station and starting driving down the road about 1 min in to drive my service light came on stating to service my power steering, I could not handle the car, the steering was stiff to turn, I had to pull over shut down the car waited a few minutes started the car back up and the power steering returned to normal. Sense then, I have had a few more occurrences with the power steering.

- **Mcdonough, GA, USA**


# #23    Impala
110,000 miles

Nov 22
**2019**

I was driving down the road back in February a week after I bought the car with 90,000 miles on it one owner the steering wheel locked in position and on the dash it said 'service power steering drive with care◆ I really didnt know what happened and and told my son I should get it checked out before I give it to him but he wanted it now and it never happened again until 11/22/19 when he came out of walmart after cranking it and killing it and minutes later it resumed to normal. Now I got to do something

- **Selmer, TN, USA**


# #22    Impala
72,180 miles

Nov 01
**2019**

When I started my car this morning, I got an message on the instrument panel that said service power steering drive with care. When I put the car in reverse, I could barely turn the steering wheel. I looked up the service message and saw that this car does not use power steering fluid, but rather an electrical system for controlling the steering. At that point I had to leave it at home so it can be taken to the mechanic. This happened with 72,180 miles on the vehicle.

- **Pell City, AL, USA**


# #21    Impala
60,000 miles

Oct 19
**2019**

Eb I84 leaving baker city or, 70mph, coming up on a series of "slow speed" S curves and the electric power steering shut down. Message on dic says "service power steering drive with care" wheel would hold whatever position it was put in and would not return to center without significant force. Nearly put the call into the concrete barrier. Just barely kept it on the road. Steering would not maintain center. Kept trying to rest just left or right of center forcing us to 'weave' back and forth as we limped the car home.

- **Nampa, ID, USA**


# #20    Impala
71,315 miles

Jun 17
**2019**

I was pulling out of the gas station on to a busy highway when the steering wheel became very difficult to move and a message came up on my dash saying "warning: Power steering system failure drive with caution. I was able to get the car to a parking lot and power cycle with no effect. After letting the car sit for 15 minutes I restarted it and the power steering was working normally. This is the second time it has failed.

- **Redmond, OR, USA**


## Impala

# #**19**    37,000 miles

MAY 20
**2019**

While driving home from work power steering lost power on bridge & could barely turn wheel had the vehicle towed to dealer when I was informed it was also leaking gas fumes
   **- Elkins Park, PA, USA**

# #**18**    **Impala**
69,717 miles

MAY 13
**2019**

While I was driving, power steering was lost. It was extremely difficult to turn the steering wheel. I could have easily crashed. The dash display showed a message, confirming the problem. My obd scan tool showed the two following dtc codes listed under power steering: C00800-12 and C056D-3B.
   **- Clinton, NY, USA**

# #**17**    **Impala**
60,020 miles

APR 26
**2019**

Sensors on the back bumper went bad due to moisture getting in, screwed up electrical system which is the brains of the vehicle. Chevy needs to recall this car, tons of owners are having this exact problem. My vehicle is currently in the repair shop and the sensors are not available due to the overwhelming number of customers that are having to purchase them. The repair shop cannot even be given an expectant date that the sensors and wiring heirness will be available. Recall theses cars Chevy, they know this is a manufacture defect, this is a $1500 fix that the customer is left to pay. When they know tons of customers with this vehicle are having the very exact some issues. My vehicle was in motion when I experienced the issues.
   **- Saginaw, MI, USA**

# #**16**    **Impala**
62,000 miles

FEB 18
**2019**

When you start to car the power steering is out and it locks up then you drive and it's like driving a manual steering car
   **- Dayton, OH, USA**

# #**15**    **Impala**
17,052 miles

MAR 09
**2019**

The contact owns a 2015 Chevrolet Impala. The contact stated that the power steering was faulty. While driving out of a parking lot, the steering wheel seized and "power steering assist" was displayed on the instrument panel. The vehicle was towed to richard lucas Chevrolet (1077 us-1, avenel, NJ 07001, (732) 634-0100) where it was diagnosed that a new rack and steering gear needed to be installed. The vehicle was not repaired. The manufacturer was made aware of the failure and did not assist. The failure mileage was 17,052.
   **- Rahway, NJ, USA**

# #**14**    **Impala**
60,700 miles

JAN 08
**2019**

My car is 2015 Impala ltz and I am the first owner. On the morning of Jan 08,2019, at 8:00am, I left my house and drove route 77 North bound to fairlawn. It is still rush hour and many cars were on the road. At the distance about 10 miles away from my house in high way of 77, my steering suddenly became very stiff and it seems it was locked. I was at the fast lane at that moment and my car was about 70 miles/hr. There is a curves ahead of me and it is so hard for me to turn the steering wheel to follow the curves. So I have to turn on the emergency light on, slow down my car and tried to steer the car to the emergency shoulder. It was so dangerous because I can not control the car direction well and slow down the car speed very fast without bumping into other cars. It is in motion condition in highway route 77 losing the control for steering wheel. My car was towed to GM dealer at approx. 10 am on Jan 08. Till now it is afternoon of Jan 09, GM dealer still can not find out the problem and get it fixed. The quality issue may cause very dangerous situation for other drivers as well. I think it is very essential for me to bring out this quality issue for 2015 Impala ltz.
   **- North Canton, OH, USA**

## #13    Impala 8-cyl
82,000 miles

Nov 27
**2018**

The contact owns a 2015 Chevrolet Impala. While driving 55 mph, the power steering indicator illuminated and the steering seized. The vehicle was taken to boyd Chevrolet Cadillac Buick (1875 spartansburg hwy, hendersonville, nc 28792, 828-693-3461), but was not diagnosed or repaired. The manufacturer was not notified of the failure. The failure mileage was approximately 82,000.

- **Henderson, NC, USA**

## #12    Impala
83,000 miles

Oct 03
**2018**

The contact owns a 2015 Chevrolet Impala. The contact stated that the power steering "drive with care" warning indicator illuminated and the steering wheel seized. There were recalls for the 2012 and 2014 model vehicles, but not for the 2015 Impala. The dealer was not notified. The manufacturer was notified of the failure. The vehicle was not diagnosed or repaired. The approximate failure mileage was 83,000.

- **Drexel Hill, PA, USA**

## #11    Impala
84,300 miles

Sep 19
**2018**

While driving a complete loss of power steering making the car extremely difficult / dangerous to steer. The entire electric power steering system needed to be replaced along with the side detection modules. A frightening experience.

- **Livonia, MI, USA**

## #10    Impala
73,000 miles

Aug 28
**2018**

The contact owns a 2015 Chevrolet Impala. While driving 35 mph, the power steering failed and the steering wheel seized. The contact stated that the power steering warning indicator illuminated. The vehicle was towed to bowman Chevrolet (6750 dixie hwy, village of clarkston, mi 48346) where they stated that the vehicle was not included in NHTSA campaign number: 14V450000(steering). The dealer also stated that the steering gear assembly needed to be replaced. The manufacturer was contacted. The vehicle was not repaired. The failure mileage was 73,000.

- **Davisburg, MI, USA**

## #9    Impala
55,000 miles

Jun 17
**2018**

Electric power steering failed whil driving making this 2 1/2 tom car impossible to steer

- **Capitol Heights, MD, USA**

---

**About CarComplaints.com ®**

CarComplaints.com ® is an online automotive complaint resource that uses graphs to show automotive defect patterns, based on complaint data submitted by visitors to the site. The complaints are organized into groups with data published by vehicle, vehicle component, and specific problem.

Copyright © 2000—2020.. "CarComplaints.com" ®, "Autobeef", "What's Wrong With YOUR Car?" are trademarks of Autobeef LLC, All rights reserved. Front ¾ vehicle photos © 1986-2018 Autodata, Inc. dba Chrome Data.

# #10

**Impala**
73,000 miles

Aug 28
**2018**

The contact owns a 2015 Chevrolet Impala. While driving 35 mph, the power steering failed and the steering wheel seized. The contact stated that the power steering warning indicator illuminated. The vehicle was towed to bowman Chevrolet (6750 dixie hwy, village of clarkston, mi 48346) where they stated that the vehicle was not included in NHTSA campaign number: 14V450000(steering). The dealer also stated that the steering gear assembly needed to be replaced. The manufacturer was contacted. The vehicle was not repaired. The failure mileage was 73,000.

- **Davisburg, MI, USA**

While driving a complete loss of power steering making the car extremely difficult / dangerous to steer. The entire electric power steering system needed to be replaced along with the side detection modules. A frightening experience.

- **Livonia, MI, USA**

# #9

**Impala**
55,000 miles

JUN 17
**2018**

Electric power steering failed whil driving making this 2 1/2 ton car impossible to steer

- **Capitol Heights, MD, USA**

# #8

**Impala**
28,000 miles

Nov 20
**2017**

On 11/20/17 my wife was driving our car, taking one of our daughters to school when the car sounded an alarm and message of "power steering failure - drive with caution" appeared on the dash. She was on a city street and moving, but needed all her strength and body weight to turn the wheel. She had the car towed tot he dealer, who advised that their was a total failure of the electronic steering rack and pinion system, making the car unsafe to drive. Further, the parts needed to repair the condition are apparently on national back order, and as of this writing GM/Chevy is not responding to my dealership's request for an eta on the needed parts. I am being told my car will very likely be kept through the new year. I am very concerned as this is a major safety issue for my family. Further, if these parts are on back order, and GM is not responding to the dealer with an eta, that tells me that this is likely a wide spread problem. I do not want my car 'repaired with a faulty design or part that may fail again, creating a dangerous situation.

- **El Granada, CA, USA**

# #7

**Impala**
16,957 miles

JUN 25
**2016**

I am writing this email in regards T my 2015 Chevrolet Impala. On March 14th 2016 I purchased a used 2015 Chevrolet Impala. When I purchased the Impala it had 12,050 miles. March 17th 2016 only three days after I purchased the car, I got in the car to head to work, when I turned the car on there was an error stating power steering needs service. The steering wheel would not turn and was in a locked position. I called the dealership and at that point they said they had to send a tow truck to pick up the vehicle. Around 11:00am that day a tow truck came to pick up the car and I went with the tow truck to the dealership to pick up a loaner vehicle. A few hours later I received a call from the service department stating my car was repaired and I could pick it up. When I picked up the car I was told there was a communication error with the power steering problem the system was reset and I should have no problems moving forward. Please see attached document dated March 17th 2016. On May 6th 2016, I was backing out of garage/ driveway and as I went to turn (still in reverse position) I suddenly was unable to steer the car. I immediately called the dealership and was sent to a voicemail due to the time being after hours. I then proceed to turn the car on and off several times and the warning went off and I was able to move the car into a safe position on the road. Please see attached document dated May 11 2016. On June 25th 2016 it happened again

# #6

## Impala

26,000 miles

Started having issues with the cv axles popping when starting and stopping at 18000 miles. Motor mount went bad shortly after and steering started acting really sluggish when trying to turn. Around 25K miles it started getting worse about turning and the gauges would start resetting on there own. After a day of that happening the passenger side dash caught on fire.

— **Gordo, AL, USA**

May 10
**2016**

# #5

## Impala

29,000 miles

Bought a pre-certified Impala, we were told that they had changed the power steering pump from the previous owner and everything was good. I just made my first payment on March 26, 2016 and that same day I went out and got in my car to leave from my daughters house and I pulled out about 100 ft and the steering wheel locked up on me, I could not turn the wheel at all. I turned my car off and called my husband, he came out and it done the same thing to him and then it finally started moving again so he took it to the dealership. They stated that it was ground wire to the power steering, so we said ok it should be fine. Today I went to stop at a stop light on a city street and the wheel pulled to the right and I turned it back to the left and the steering wheel would turn but it kept going to the right. Thank god I got stopped, it finally decided to straighten out and it was pulling to the right so now it is back in the shop and I am afraid to drive the car again. This has been a very stressful experience.

— **Plain City, OH, USA**

Apr 08
**2016**

# #4

## Impala

22,198 miles

This is the 2nd compliant I am filing and it is the 3rd time this has happened. On March 12, 2016 I was leaving my friends house and got about 2 blocks from their house when my steering wheel locked and a message on the dash board read power steering service caution! and at the bottom dismiss, I almost hit a parked car that was parked on the street. I called GM roadside assistance and after waiting about 15 minutes I started the car back up and the wheel was turning so I took it back and parked it had my friends house instead of on the street and had GM send a tow truck the next morning to have it taken to the local dealer for service. The past 2 times this has happened they could not or would not guarantee me that it wouldn't happen while I was driving it and now it has. Something needs to be done with this issue before someone gets killed.

— **Vero Beach, FL, USA**

Mar 12
**2016**

# #3

## Impala

16,036 miles

On August 19, 2015 I started my car put it into reverse and the steering wheel would not turn and it displayed service power steering. I turned off the ignition waited a few minutes and tried again but it still would not turn, I called GM roadside assistance and they sent out a tow truck to have them take it to the local Chevy dealer for service when the driver got here started the car and the wheel turned but he put it on a flat bed and took it to the dealer they said the cause was a defective B.P.M.V. they replaced part # 23208065 F (s) module reprogram ed and bleed the system said they road tested it for 40 miles with 6 ignition cycles but the mileage when it went in was at 16036 and when it came out was at 16055 as you can see on the document I am attaching. They returned my car to me on August 28, 2015. But they could not tell me if this could happen while I am driving the car. On December 19, 2015 I went

Aug 19
**2015**

to start my car and it would not start so again I called GM roadside assistance they sent a tow truck and he took the car to the local dealer for service they the cause was a defective battery 4041510 battery replacement 247 w and replaced it with part# 88865245. On December 26, 2015 I was leaving a friends house when I started the car put it in reverse and the steering wheel would not turn and the display read service power steering. Since it was late on Saturday night our friend drove use home I went back today started the car and the steering wheel was turning so I drove it home but since the dealer is closed at this time I will call on Monday morning to have it taken back to be serviced again the mileage at this time is 19691.

- **Vero Beach, FL, USA**

## #2

### Impala
3,838 miles

Oct 16
**2015**

At 1884K mi leaving home depot parking lot pwr steering went out with warning on dash (power steering failure drive with caution). Towed to porter Chevrolet in newark de. Where they replaced the electric pwr steering rack. The car was in the shop for a week. Now, at 3838K mi the same situation has occurred after pulling out of my driveway and starting down the street. This 4908 lb. Car is almost impossible to steer when this happens.

- **Newark, DE, USA**

## #1

### Impala
8,000 miles

Oct 05
**2015**

The contact owned a 2015 Chevrolet Impala. The contact stated that while driving at unknown speeds and attempting to make a complete stop, the brake pedal was depressed and the vehicle would not stop. The contact also stated that the steering wheel failed to respond causing the contact to crash into a ditch and impacted the driver side of the vehicle. The air bags deployed. A police report was filed. The contact stated that injuries were sustained that required medical attention. The vehicle was towed to an independent mechanic where it was deemed destroyed. The manufacturer was not made aware of the failure. The failure mileage was 8,000.

- **Alexandria, VA, USA**

## About CarComplaints.com ®

CarComplaints.com ® is an online automotive complaint resource that uses graphs to show automotive defect patterns, based on complaint data submitted by visitors to the site. The complaints are organized into groups with data published by vehicle, vehicle component, and specific problem.

Copyright © 2000–2019.. "CarComplaints.com" ®, "Autobeef", "What's Wrong With YOUR Car?" are trademarks of Autobeef LLC, All rights reserved. Front 3/4 vehicle photos © 1986-2018 Autodata, Inc. dba Chrome Data.



# NHTSA — Steering Problems

2014 CHEVROLET IMPALA (PAGE 3 OF 3)

**Crashes / Fires:**
## 4 / 0

**Injuries / Deaths:**
## 1 / 0

**Average Mileage:**
## 46,142 miles

**About These NHTSA Complaints:**

This data is from the NHTSA — the US gov't agency tasked with vehicle safety. Complaints are spread across multiple & redundant categories, & are not organized by problem.

So how do you find out what problems are occurring? For this NHTSA complaint data, the only way is to read through the comments below. Any duplicates or errors? It's not us.

**« Read the previous 20 complaints**

## 2014 CHEVROLET IMPALA OWNER COMMENTS   (PAGE 3 OF 3)

### #16   Impala 6-cyl
69,000 miles
JAN 13 **2017**

The power steering went out while driving 65 mph down the highway. I called a Chevy dealership after doing research and I found out there was a recall on my car for the power steering. The Chevy dealer told me that the recall had already been fixed. I feel there is a faulty part placed on my car during the "fixing of the recall" making the power steering go out again. The power steering should have lasted longer than two years.
- **Frontenac, KS, USA**

### #15   Impala 6-cyl
64,000 miles
JAN 04 **2017**

While driving power steering light came on and power steering completely went out.
- **Eunice, LA, USA**

### #14   Impala
70,000 miles
AUG 26 **2016**

The contact owns a 2014 Chevrolet Impala. The contact stated that the vehicle was previously repaired per a recall pertaining to the steering; however, the vehicle was still experiencing the same failure. While leaving the dealer, the power steering failed. The manufacturer was notified of the failure and no additional repairs were made to the vehicle. The NHTSA campaign number was unknown. The failure mileage was 70,000.
- **Shreveport, LA, USA**

## Impala

## #13
72,000 miles

JUL 14
2016

The contact owns a 2014 Chevrolet Impala. While driving 25 mph, the power steering seized and the driver lost control of the vehicle and crashed into a fire hydrant. The power steering warning light illuminated. The vehicle was not able to restart. The front bumper was fractured. There were no injuries sustained and a police report was not filed. The vehicle was taken to the dealer, but was not diagnosed or repaired. The VIN was excluded from NHTSA campaign numbers: 14V450000 (steering) and 14V409000 (steering). The failure mileage was 72,000.

- **Houston, TX, USA**

## #12 Impala
26,700 miles

JUL 03
2016

On July 3, 2016 I was traveling on a road (hwy 620 in lakeway tx) on a curve at around 50-55 mph and the power steering went out.

- **Austin, TX, USA**

## #11 Impala 6-cyl
Automatic transmission     miles

OCT 02
2015

The contact owns a 2014 Chevrolet Impala. The contact stated that there was a random progressing failure in which the steering wheel seized without warning. The contact had to turn the vehicle off and back on to reset the computer. The vehicle was taken to a dealer for diagnostic testing. The VIN was not included in NHTSA campaign numbers: 14V450000 (steering) and 14V409000 (steering). The manufacturer was notified of the failure and provided no remedy. The VIN and failure mileage were not available. Updated 01/27/16

- **Wellsville, PA, USA**

## #10 Impala 4-cyl
3,200 miles

OCT 06
2014

At highway speeds from 45-70mph on both straight, smooth pavement and on wide sweeping curves, the steering "freezes" and requires a turn of the wheel to regain control. This "freezing" feels like the steering is stuck in a notch, or certain position. This has occurred on slippery conditions at lower speeds (42 mph) and the effort to correct the steering resulted in an over-correction on the slippery road surface causing the car to slide into the oncoming lane. The Chevrolet dealer says they "can't duplicate the condition." The first time the condition was observed, the temperature was in the 60S. It is more frequent when the temperature is 20-35 degrees. With 8600 miles as of 4/6/15, the condition persists more frequently.

- **Saint Ignace, MI, USA**

## #9 Impala
miles

SEP 03
2014

On 9/3/14 a new Chevy Impala vehicle was leased to me while under A7/23/14 open recall for power steering. I understand that this is illegal and the transaction is not legal. Please advise.

- **St Albans, NY, USA**

## #8 Impala 6-cyl
9,400 miles

NOV 15
2014

Driving under normal highway conditions the power steering suddenly stopped functioning and the "service power steering" message displayed on the dash. I pulled the vehicle off at the next exit and turned the engine off. When restarted the power steering returned as I assume the software rebooted. The power steering recall has been performed on the vehicle prior to this incident. This is the first time it has happened and the dealer cannot find the issue thus making the vehicle unsafe to drive in my opinion especially since I have 16 year old daughter learning how to drive. If she had been driving when this incident happened I highly doubt she would have been strong enough to maneuver the car.

- **Herndon, VA, USA**

## #7    **Impala 6-cyl**     SEP 19 **2014**
miles

Vehicle sold/leased on 9/3/14 with open recalls the consumer stated two weeks after purchasing the vehicle, it had to be towed due to a malfunctioning parking brake, which was recalled. On November 16,2 014, he received a recall notice regarding an issue with the power steering. The dealer claimed the power steering had already been performed. The consumer was then provided proof, the recall had not been performed. Updated 06/10/15. Updated 08/22/16.

    - **St Albans, NY, USA**

## #6    **Impala**     OCT 30 **2014**
527 miles

The contact owns 2014 Chevrolet Impala. The contact received a notification for NHTSA campaign number 14V541000 (brakes). However, the parts needed were not available. The dealer was contacted and advised the contact that the parts would not be available until February. In addition, the contact stated that while driving at an unknown speed, the power steering failed and when engaging the brake the vehicle hesitated and lunged forward. The vehicle was not repaired. The failure mileage was 527.

    - **Rochesdter, NY, USA**

## #5    **Impala**     AUG 25 **2014**
miles

The contact owns a 2014 Chevrolet Impala. The contact received a recall notice for NHTSA campaign number: 14V450000 (steering). The contact stated that the part needed to remedy the vehicle was unavailable. The manufacturer was made aware of the issue. The contact had not experienced a failure.

    - **Nashua, NH, USA**

## #4    **Impala**     SEP 09 **2014**
15 miles

The contact owns a 2014 Chevrolet Impala. While driving at least 45 mph, the vehicle vibrated violently and made it difficult to control. The vehicle was not repaired and the manufacturer was not notified. The failure mileage was 15.

    - **Detroit, MI, USA**

## #3    **Impala**     AUG 01 **2014**
9,000 miles

The contact owns a 2014 Chevrolet Impala. The contact stated that while driving 35 mph, the power steering failed. The steering wheel became hard to maneuver. The vehicle was towed to a dealer, who replaced the steering rack and pinion. The manufacturer was not notified of the failure. The approximate failure mileage was 9,000.

    - **Bellville, OH, USA**

## #2    **Impala**     JUL 03 **2014**
29,000 miles

The contact owns a 2014 Chevrolet Impala. The contact stated that while making a rapid left turn, the steering wheel seized causing the contact to crash into another vehicle. The contact also stated that the power steering warning light illuminated and a chime sounded. A police report was filed. The contact sustained a burn from the air bag deployment and did not require medical attention. The contact was able to drive the vehicle from the crash. The vehicle was not diagnosed or repaired. The manufacturer was not notified of the failure. The approximate failure mileage was 29,000.

    - **Greensboro, NC, USA**

## #1    **Impala**     NOV 21 **2013**
11,368 miles

Case 3:20-cv-01009-MPS   Document 1-1   Filed 07/17/20   Page 45 of 85

At 55 mph on a slippery right hand side curve (speed limit is 65 mph) vehicle under-steered and lost traction completely, without touching the brakes, it started to slow down and skidded to the outside of the curve (to the left). I tried to get it back to the driving lane, it started to skid laterally to the right and slowed down until it hit a reflector post on the edge of the right lane and stopped. Vehicle information on the dash board read "ice detected...". although the damage on the right door was a very minor dent, the car deployed all 4 head curtain airbags and 2 right side airbags, engine was shut down and front seat-belts were stuck. Few minutes later, the engine ran normally with the "ice detected.." message still on. It seems that the airbags sensors were activated for no required reason for a minor dent on the door. Also, the stability and the faulty braking system might be of a great safety issue on this vehicle.

- **Laramie, WY, USA**

---

**About CarComplaints.com ®**

CarComplaints.com ® is an online automotive complaint resource that uses graphs to show automotive defect patterns, based on complaint data submitted by visitors to the site. The complaints are organized into groups with data published by vehicle, vehicle component, and specific problem.

Copyright © 2000—2019.. "CarComplaints.com" ®, "Autobeef", "What's Wrong With YOUR Car?" are trademarks of Autobeef LLC, All rights reserved. Front ¾ vehicle photos © 1986-2018 Autodata, Inc. dba Chrome Data.

# The New York Times

# G.M. Deems Steering Issue Unworthy of Recall

**By Christopher Jensen**

April 10, 2015

As awareness grew last year of General Motors' failure to disclose a dangerous defect in millions of older cars, its executives had a clear message for the public: Safety was G.M.'s first priority.

By the end of the year, G.M. had recalled a record number of vehicles — 30 million in North America — and overhauled its safety practices.

But the company's handling of a recent steering issue sheds new light on where G.M., and regulators, draw the line at what constitutes a safety issue worthy of a recall.

Specifically, owners of some of General Motors' most popular cars are complaining of a problem that they say is dangerous because the steering wheel can stick after driving in one position for long periods.

"I was driving through a construction zone when my steering wheel locked up," the owner of a 2013 Buick Verano wrote the National Highway Traffic Safety Administration in December. The owner is one of more than 50 who cited a similar problem to the agency.

"It surprised me and caused me panic somewhat. The lane was very narrow and started to turn, but my steering wheel did not respond the way it should. It took a lot of effort to turn the wheels. The car got too close to the cement guardrails and collided with them." No injuries were reported.

Last July, G.M. sent dealers a technical service bulletin that told them how to fix the problem, but only if an owner complained to a dealer. The repair is made with a software update and is covered for 10 years or 150,000 miles from the time the vehicle was new.

The automaker alerted owners to the problem in a letter in November, saying that the steering wheel can "stick in the straight-ahead position" after driving long distances in a straight line. It did not issue a recall.

General Motors has concluded that there is no need for a recall, Alan Adler, a spokesman for the automaker, wrote in an email.

"Based on a very low rate of occurrence — ranging from less than one half to less than two incidents per thousand vehicles — and the fact that the condition is remedied when the wheel is turned, G.M. determined this was not a safety issue," he wrote.

Federal regulators have not seen reason to open an investigation.

"Based on the bulletin and complaint narratives, the symptoms described would be a brief, perceptible change in steering feel that has little to no effect on the driver's ability to safely steer the vehicle," Catherine Howden, a spokeswoman for N.H.T.S.A., wrote in an email.



A Buick Verano on the assembly line in Orion Township, Mich. More than 50 Verano owners have reported a steering problem.   Duane Burleson/Associated Press

But one former top investigator for the safety agency said that complaints about steering should always prompt a thorough investigation.

"There's a possibility this would startle an inexperienced or elderly driver with bad consequences," said Michael Brownlee, who ran the safety agency's Office of Defects Investigation from 1987 to 1991 and retired in 1997 as associate administrator for enforcement.

The problem was found on some models of the 2013-14 Buick Verano, Chevrolet Cruze and Chevrolet Malibu.

G.M.'s decision not to recall the cars followed a similar decision that involved brakes in pickup trucks and sport utility vehicles. In that case, owners complained to the safety agency that their brakes failed after the lines rusted, but G.M. has resisted issuing a recall, saying the issue is one of maintenance. About 2 million trucks from the 1999 to 2003 model years are affected.

The safety agency began looking into that issue five years ago and recently concluded its investigation after reviewing 3,645 complaints from owners including allegations of 107 crashes resulting in 40 injuries.

The agency said that while failures could significantly increase stopping distances, there was no reason for a recall because the rusted lines were a result of expected wear, particularly on older vehicles in areas where road salt is used. The agency also urged owners to routinely wash their vehicles.

Automakers have recalled vehicles over steering problems before. In February and early March, almost 400,000 vehicles were recalled by General Motors, Hyundai and Toyota because the power assist to the steering could be lost, making the vehicles harder to turn.

But regulators see the sticking problem as "significantly different" from a vehicle's losing the power assist, Ms. Howden said. "When terms like 'notchy,' 'stick,' 'slip' or 'feel' are used, it does not indicate a meaningful increase in steering effort," she wrote in an email.

Service bulletins are not intended to address serious safety issues, which by law must be handled by recalls monitored by the National Highway Traffic Safety Administration. A recall requires repairs to vehicles that have not yet experienced a problem. With a service bulletin, there are no such pre-emptive repairs.

But sending the bulletins instead of issuing recalls was an approach that G.M. used in previous years. A New York Times investigation last year found that seven recalls for serious safety problems had been preceded sometimes by years by technical service bulletins sent to dealers, a far cheaper alternative to fixing every vehicle. And federal regulators have admonished G.M. for the practice.

Even as G.M. decided not to issue a recall, owners continued to express concern to regulators.

"At highway speeds the steering sticks, making it scary to drive and dangerous," the owner of a 2013 Cruze wrote to the agency in December.

At least two minor accidents were reported but there was no mention of injuries.

In one of those crashes, the owner of a 2014 Cruze told the agency of "driving approximately 15 miles per hour, making a left-hand turn, the steering wheel seized and caused the vehicle to crash into a sidewalk."

Another 2013 Cruze owner told regulators in December that the sticking steering "requires extra exertion of force to move it in either direction. This results in the car swerving and on more than one occasion almost wrecking."

A version of this article appears in print on April 11, 2015, on Page B1 of the New York edition with the headline: Steering Issue but No Recall From G.M.



search

Home > Lawsuits > GM Facing Class Action over Alleged Defective Steering in Chevy Cruz, Chevy Malibu and Buick Veranos

# GM Facing Class Action over Alleged Defective Steering in Chevy Cruz, Chevy Malibu and Buick Veranos

*January 20 2016 - by Lucy Campbell*



*Santa Clara, CA:* General Motors (GM) is facing a proposed *defective automotive* class action lawsuit alleging its Chevy Cruz, Chevy Malibu and Buick Verano suffer from a steering defect that could make the cars veer dangerously as well as lower their resale value.

Filed by Briani Mendoza, the lawsuit asserts that the steering wheel in her Chevy Cruz locks and requires turning the wheel with extra force, which could make the car turn sharply when the wheel comes unstuck. The lawsuit further asserts that GM knew of the problem in three models from years 2011-2014. However, despite this knowledge, the automaker has so far refused to fix the issue in violation of warranty and consumer protection laws.

"The steering system is one of the most important components for vehicle control and safe driving,"the complaint states. "A defective steering system has serious consequences for the handling, maneuvering and stability of the class vehicles while in operation and can contribute to car accidents and potential injury or death."

In her complaint, Mendoza claims the vehicle's electronic power steering system locks in the straight position after the car has been traveling a long distance on a straight highway. After that happens, the driver has to exert more pressure to the wheel to free it and is in danger of exerting too much force, causing the wheel to turn too far and the car to suddenly veer, the lawsuit states.

In November 2014, GM issued a service bulletin via the National Highway Traffic Safety Administration, offering to repair the alleged defect at free of charge. The letter asked drivers who had experienced the issue to bring their cars to dealerships.

However, the complaint alleges GM used the same defective parts to fix the problem, and therefore the problem would likely manifest again after the car's limited warranty expired. Further, the suit notes, the automaker should have issued a full recall to fix the steering systems in all of the potentially affected vehicles.

The lawsuit claims GM should have known about the defect via its testing process and customer complaints. Therefore, GM's handling of the issue together with its probable prior knowledge violated California's Consumer Legal Remedies Act, Unfair Competition Law and Song-Beverly Consumer Warranty Act, the lawsuit claims. Additionally, the automaker breached its express and implied warranties in violation of the Magnuson-Moss Warranty Act.

The driver seeks to represent a California and national class of Cruze, Malibu and Verano owners whose cars dropped in value because of the defect, and aims to recover damages or secure an injunction requiring the automaker to fix the steering flaw, along with punitive damages.

Mendoza is represented by Michael Louis Kelly, Behram V. Parekh and Heather Baker Dobbs of Kirtland & Packard LLP. The case is Mendoza v. General Motors LLC, case number 2:16-cv-00404, in U.S. District Court for the Central District of California.

## Legal Help

If you or a loved one has suffered similar damages or injuries, please fill in our form on the right and your complaint will be sent to an automotive accidents lawyer who may evaluate your claim at no cost or obligation.

**Stay Informed**

Get the latest on class action lawsuits, settlements & more! Subscribe to our free weekly newsletter.

**Get our Newsletter!**

**Submit a New Complaint**

Been wronged by a similar product or service? Click here to send us your complaint.

## Reader Comments

| | |
|---|---|
| Posted by laurie freitas on April 15, 2019 | *i have a 2212 chevy malibu should i be worried about the steering wheel* |
| Posted by laurie freitas on April 14, 2019 | *i have a 2012 chevy malibu my steering is acting funny what should i do* |
| Posted by Patricia Branham on March 13, 2019 | *My 2006 Malibu was recalled in February, 2015, for a power steering issue. I was not having a problem but took the car to the dealer and they replaced a sensor. I had only 34,352 miles on the car. A couple of weeks ago, the power steering went out in my car. I have only driven it 10,000 miles since 2015, so the car only has 44,000 on it. Having doing some research, I found that GM now has a 10 year or 250,000 mile window on all cars who received a recall notice in 2015. This is per Jeffrey M. Boyer, Vice President of Global Vehicle Safety. I ar* **Request Legal Help** *believing they would make it right. They were rude and* |

dismissive and wanted almost $1,500 to do the repair. The power steering thus far has reset itself once you turn off the engine, and I left the dealership, came home and called GM customer service. That was on March 1. I waited until March 6, before calling again. Once again, I was told they would follow up this time and finally I received a return call the next day. This person promised she would do some GM "magic" but after a couple of other calls, she determined they would not repair the car. Clearly, it was her job to just get rid of me. I have told them I am not going away. I intend to write a letter to Mary Barra, and if I get another negative response, then I am turning to my attorney. I have been a Chevy owner my entire life, having purchased 11 Chevy's. I have spent thousands on some big mean machines, including 3 Monte Carlos, an SS396, Z28, to name a few. Customer service has always been one of their best assets, but no more.

| | |
|---|---|
| Posted by<br>LaChant Tyson<br>on January 26, 2019 | I have a 2012 Chevy Malibu and have been experiencing these problems recently I was trying to see if anyone else was having the same problem I've run into a few people I would like to be a part of this class action lawsuit to at least have Chevy to fix my car so that this problem does not happen Again it is a danger especially when driving on the highway like I do |
| Posted by<br>David Copus<br>on December 10, 2017 | My son totaled our 2014 Chevy Cruz. The steering wheel locked and caused him to cross the center line and hit a culvert on the other side of the road. Very lucky his injuries were not worse. It's kind of hard for them to correct the problem now. Will someone being killed be what is necessary for them to post a recall? |
| Posted by<br>Ed<br>on January 24, 2017 | I own a 2006 Pontiac G6. I have had the Steering fix more than once, the last time was about 2 years ago. Once again the steering has gone out and GM refuses to make repairs because it was fixed under the recall and unless the problem reoccurs with in 1 year they consider the problem fixed and you are on your own.<br><br>My advice, by anything else but a GM with electrical assist steering, it could ave your life!!!!!<br><br>I now have a 3000 pound brick on my driveway, owner loyalty means nothing once they have your money! |
| Posted by<br>Eva Nichols<br>on January 22, 2017 | I had a 2013 Chevy Cruze , I no longer have it because the car was in a major wreak on the highway... Problems with excelling and brakes.. |
| Posted by<br>Jennifer Watts<br>on July 23, 2016 | I received a recall notice for the power steering on my 2012 Malibu. I took it in because it was doing some of what they said it would do if it had problems. They looked at it and said "We hooked it up to our computer and the computer won't tell us what the problem is" and they sent me on my way without fixing the problem. |
| Posted by<br>Theresa S<br>on April 10, 2016 | I have had multiple problems with steering and electrical issues with 2013 Chevy Malibu. Have had at dealer several times to fix, contacted General Motors and filed complaint with NHTSA. Problems not resolved. How do I join class action lawsuit?? |
| Posted by<br>David Krumpe<br>on February 4, 2016 | I have a 2012 Malibu and received a letter from GM that said this problem exists with some 2012 Malibus. However, it said I should not take it to a dealer for a correction if the problem has not happened. Instead the warranty is extended for 10 yrs. on the steering. I think this is unsatisfactory because I am retired and don't drive much per year. I usually keep a car a long time. Therefore, the 10 yrs. could expire, and then the problem could occur, and I would have to pay for the repair. GM should design parts that correct the problem, if they haven't done so already, and then install the new parts. For those who drive more miles per year, GM should not wait for a wreck to happen when they know this problem exists. |
| Posted by<br>David Spurlock<br>on January 31, 2016 | I have a 2013 Cruze R/S that has this problem. It has been to a dealership and a program put on it but it still does it.<br>The car has 14,000 miles on it and afraid for my family to drive it.<br>Any suggestions |
| Posted by<br>Charlene Andrade<br>on January 31, 2016 | I have a 2012 Chevy Malibu, should I be worried about this steering wheel issue? |

## Add Your Comment on This Issue

Fields marked * are mandatory. Please read our comment guidelines before posting.

*Name:

Note: Your name will be published with your comment.

*Email Address:

Your email will only be used if a response is needed.

*Your Comment:

## Request Legal Help

https://www.consumerreports.org/car-recalls-defects/cadillacs-camaros-corvettes-recalled-for-power-steering-problem/

# Cadillacs, Camaros, Corvettes Recalled for Power Steering Problem

GM says the problem may be caused by an electrical short circuit

By Keith Barry
March 14, 2019



General Motors is recalling 26,772 cars, including certain 2016-2018 Cadillac CTS sedans, 2017 Chevrolet Corvette and Camaro coupes, and 2017 Cadillac ATS

sedans.

The electric power-steering assist may fail while the vehicle is in motion. If power steering is lost, drivers may have to steer with more effort. If this happens unexpectedly, it may lead to a crash, especially at low speeds, according to the National Highway Traffic Safety Administration.

Drivers may also see a warning message on the dashboard if the power-steering assist fails. Power steering may start working again after the vehicle is turned off and restarted, but may fail again later, NHTSA says.

GM has already recalled over 1.7 million trucks and SUVs for power-steering issues in separate campaigns.

## Choosing It, Insuring It, Driving It

Get everything you need to know when it comes to your vehicle.

Join

The Details

**Vehicles recalled:** 26,772 cars, including:

• 2016-2018 Cadillac CTS sedans manufactured from July 1, 2016 through May 24, 2017

• 2017 Cadillac ATS sedans manufactured from July 24, 2016 through May 30, 2017

• 2017 Chevrolet Corvette coupes manufactured from July 27, 2016 through May 4, 2017

• 2017 Chevrolet Camaro coupes manufactured from July 1, 2016 through May 19, 2017

**The problem:** A manufacturing error may cause an electrical issue in the affected vehicles' power-steering systems, causing it to fail.

**The fix:** Dealers will replace the faulty part free of charge and will reimburse owners who paid for prior repairs out of pocket.

**How to contact the manufacturer:** Owners may contact Cadillac customer service at 800-458-8006, or Chevrolet customer service at 800-222-1020.

**NHTSA campaign number:** 19V086. GM's own number for this recall is N182182760

**Check to see whether your vehicle has an open recall:** NHTSA's website will tell you whether your vehicle has any open recalls that need to be addressed.

If you plug your car's 17-digit vehicle identification number (VIN) into NHTSA's website and this recall doesn't appear, it means your vehicle doesn't currently have

any open recalls. Because automakers issue recalls often, and for many older vehicles, we recommend checking back regularly to see whether your vehicle has had a recall issued.

**Stay informed about recalls that might affect your vehicle by using our Car Recall Tracker. Create a free account now to become a CR member.**



© 2006 - 2016 Consumer Reports

# EXHIBIT D

**COMPLAINTS**     **RECALLS**     **INVESTIGATIONS**     **MANUFACTURER COMMUNICATIONS**

# 12 Recalls
## for 2014 CHEVROLET IMPALA

**FILTER RECALLS BY AFFECTED COMPONENTS**

( All (12) ) ( AIR BAGS (2) ) ( ELECTRICAL SYSTEM (3) ) ( EXTERIOR LIGHTING (1) ) ( PARKING BRAKE (3) )
( POWER TRAIN (1) ) ( STEERING (2) ) ( STRUCTURE (1) )

July 23, 2014
**NHTSA CAMPAIGN NUMBER: 14V450000**
## Loss of Power Steering Assist

○

If power steering assist is lost, greater driver effort would be required to steer the vehicle at low speeds, increasing the risk of a crash.

**NHTSA Campaign Number:** 14V450000

**Manufacturer** General Motors LLC

**Components** STEERING

**Potential Number of Units Affected** 57,242

**Summary**

General Motors LLC (GM) is recalling certain model year 2014 Chevrolet Impala vehicles manufactured November 5, 2012, to December 20, 2013. Due to a poor electrical ground connection to the Power Steering Control Module (PSCM), the affected vehicles may have a loss of power steering assist during start up or while driving.

**Remedy**

GM will notify owners, and dealers will clean paint from behind the ground stud nut and update the PSCM software, free of charge. Owners may contact Chevrolet customer service at 1-800-222-1020. The recall began on August 21, 2014. GM's number for this recall is 14330.

**Notes**

Owners may also contact the National Highway Traffic Safety Administration Vehicle Safety Hotline at 1-888-327-4236 (TTY 1-800-424-9153), or go to www.safercar.gov.

**1 Affected Product** ⌄

**12 Associated Documents** ⌄

☐ **Request Research** (Services fees apply)

July 2, 2014

NHTSA CAMPAIGN NUMBER: 14V409000

# Improperly Torqued Steering Component Fasteners

If any of the components separate, the vehicle may have a loss of steering, increasing the risk of a crash.

**NHTSA Campaign Number:** 14V409000

**Manufacturer** General Motors LLC

**Components** STEERING

**Potential Number of Units Affected** 106

### Summary

General Motors LLC (GM) is recalling certain model year 2014 Buick Regal, Cadillac XTS, Chevrolet Camaro and Chevrolet Impala vehicles. Improperly torqued fasteners may cause the steering intermediate shaft and the steering gear and/or the lower control arm and the lower ball joint to separate.

### Remedy

GM began to notify owners on June 27, 2014, and dealers will inspect the fasteners for correct torque, correcting them as necessary, free of charge. Owners may contact GM customer service at 1-800-521-7300 (Buick), 1-800-458-8006 (Cadillac) or 1-800-222-1020 (Chevrolet). GM's number for this recall is 14378.

### Notes

Owners may also contact the National Highway Traffic Safety Administration Vehicle Safety Hotline at 1-888-327-4236 (TTY 1-800-424-9153), or go to www.safercar.gov.

**4 Affected Products** ⌄

**11 Associated Documents** ⌄

☐ **Request Research** (Services fees apply)

# GENERAL MOTORS
Recalls, Repair & Diagnostic Tips

RECALLS   DIAGNOSTIC TIPS   REPAIR TIPS   LINKS   E-BOOKS   STORE   OEMDTC

Custom Search



amazon.com
Summer Savings
Save on Automotive
parts & accessories
Shop now ▸

# 14330: Product Safety – Loss Of Power Steering Assist – 2014 Chevrolet Impala

👤 oemdtc   🗓 November 30, 2016   🖹 Recalls

**NHTSA Campaign Number:** 14V450
**Component(s):** STEERING
**Potential Number of Units Affected:** 57,242

**Manufacturer:** General Motors LLC

## SUMMARY:

Shares

14330: Product Safety – Loss of Power Steering Assist – 2014 Chevrolet Impala | General Motors

General Motors LLC (GM) is recalling certain model year 2014 Chevrolet Impala vehicles manufactured November 5, 2012, to December 20, 2013.

Due to a poor electrical ground connection to the Power Steering Control Module (PSCM), the affected vehicles may have a loss of power steering assist during start up or while driving.

## CONSEQUENCE:

If power steering assist is lost, greater driver effort would be required to steer the vehicle at low speeds, increasing the risk of a crash.

## REMEDY:

GM will notify owners, and dealers will clean paint from behind the ground stud nut and update the PSCM software, free of charge.

CATEGORIES

Select Category

Shares

14330: Product Safety – Loss of Power Steering Assist – 2014 Chevrolet Impala | General Motors

Owners may contact Chevrolet customer service at 1-800-222-1020.

The recall began on August 21, 2014.

GM's number for this recall is 14330.

## NOTES:

Owners may also contact the National Highway Traffic Safety Administration Vehicle Safety Hotline at 1-888-327-4236 (TTY 1-800-424-9153), or go to www.safercar.gov.

Check if your Vehicle has a Recall

#14330: Product Safety – Loss of Power Steering Assist – (Jul 23, 2014)

**Subject:**   14330 – Loss of Power Steering Assist

**Models:**   2014 Chevrolet Impala

It is a violation of Federal law for a dealer to deliver a new motor vehicle or any new or used item of motor vehicle equipment (including a tire) covered by this notification under a sale or lease until the defect or noncompliance is remedied.

All involved vehicles that are in dealer inventory must be held and not delivered to customers, dealer traded, or used for demonstration purposes

https://gm.oemdtc.com/6884/14330-product-safety-loss-of-power-steering-assist-2014-chevrolet-impala





ARCHIVES

Select Month

Search ...

14330: Product Safety – Loss of Power Steering Assist – 2014 Chevrolet Impala | General Motors

until the repair contained in this bulletin has been performed on the vehicle.





## Condition

General Motors has decided that a defect which relates to motor vehicle safety exists in certain 2014 model year Chevrolet Impala vehicles. Some vehicles may experience an intermittent or lasting loss or reduction of power steering assist at startup or while driving due to a poor electrical ground connection to the Power Steering Control Module (PSCM). If power steering assist is lost or reduced, a message is displayed on the Driver Information Center and a chime sounds to inform the driver. Steering control can be maintained because the vehicle will revert to manual steering mode, but would require greater driver effort particularly at low vehicle speeds, increasing the risk of a crash.

## Correction

Dealers are to inspect and clean the PSCM ground at the strut tower, and update the PSCM software.

## Vehicles Involved

All involved vehicles are identified by Vehicle Identification Number on the Investigate Vehicle History screen in GM Global Warranty Management system. Dealership service personnel should always check this site to confirm vehicle involvement prior to beginning any required inspections and/or repairs. It is important to routinely use this tool to verify eligibility

because not all similar vehicles may be involved regardless of description or option content.

For dealers with involved vehicles, a listing with involved vehicles containing the complete vehicle identification number, customer name, and address information has been prepared and will be provided to US and Canadian dealers through the GM GlobalConnect Recall Reports. Dealers will not have a report available if they have no involved vehicles currently assigned.

The listing may contain customer names and addresses obtained from Motor Vehicle Registration Records. The use of such motor vehicle registration data for any purpose other than follow-up necessary to complete this recall is a violation of law in several states/provinces/countries. Accordingly, you are urged to limit the use of this report to the follow-up necessary to complete this recall.

## Parts Information

No parts are required for this recall.

## Service Procedure

Shares





Shares

1. Inspect the G111 ground (1) and the 100A F3UB fuse (2) for proper connection. Ensure the ground is free of paint and both connections are tight.
2. Fully charge the battery using the GR-8 Tool (EL-50313).
3. Reprogram the power steering control module using the Service Programming System (SPS) with the latest calibrations available on TIS2WEB. Refer to the *Power Steering Control Module Programming and Setup (NJ2)* procedure in SI.

# Courtesy Transportation – For US and Canada

The <u>General Motors</u> Courtesy Transportation program is intended to minimize customer inconvenience when a vehicle requires a repair that is covered by the New Vehicle Limited Warranties. The availability of courtesy transportation to customers whose vehicles are within the warranty coverage period and involved in a product program is very important in maintaining customer satisfaction. Dealers are to ensure that these customers understand that shuttle service or some other form of courtesy transportation is available and will be provided at no charge. Dealers should

refer to the General Motors Service Policies and Procedures Manual for Courtesy Transportation guidelines

## Warranty Transaction Information

Submit a transaction using the table below. All transactions should be submitted as a ZFAT transaction type, unless noted otherwise.

| Labor Code | Description | Labor Time |
|---|---|---|
| 9100749 | Repair Ground and Program Power Steering Control Module | 0.5 |

## Customer Notification – For US and Canada

General Motors will notify customers of this recall on their vehicle (see copy of customer letter included with this bulletin).

## Dealer Recall Responsibility – For US and Export (US States, Territories, and Possessions)

It is a violation of Federal law for a dealer to deliver a new motor vehicle or any new or used item of motor vehicle equipment (including a tire) covered by this notification under a sale or lease until the defect or noncompliance is remedied.

The US National Traffic and Motor Vehicle Safety Act provides that each vehicle that is subject to a recall of this type must be adequately repaired within a reasonable time after the customer has tendered it for repair. A failure to repair within sixty days after tender of a vehicle is prima facie evidence of failure to repair within a reasonable time. If the condition is not adequately repaired within a reasonable time, the customer may be entitled to an identical or reasonably equivalent vehicle at no charge or to a refund of the purchase price less a reasonable allowance for depreciation. To avoid having to provide these burdensome remedies, every effort must be made to promptly schedule an appointment with each customer and to repair their vehicle as soon as possible. In the recall notification letters, customers are told how to contact the US National Highway Traffic Safety Administration if the recall is not completed within a reasonable time.

Shop Related Products



General Motors 20983936 Power
Outlet Cover by General Motors

$5.82

(247)

KINGLAKE 240 Pcs Push Retainer
Kit,Great Assortment of Push...

$14.89

(246)

Dupli-Color BGM0528 Fine Silver
Birch Metallic General Motors...

$14.07

(4401)

Ads by Amazon

# Dealer Recall Responsibility – All

14330: Product Safety – Loss of Power Steering Assist – 2014 Chevrolet Impala | General Motors

9/20

General Motors has decided that a defect, which relates to motor vehicle safety, exists in certain 2014 model year Chevrolet Impala vehicles. As a

This notice is sent to you in accordance with the National Traffic and Motor Vehicle Safety Act.

This notice applies to your vehicle, VIN: _____

Dear General Motors Customer:

October 2014

In summary, whenever a vehicle subject to this recall enters your vehicle inventory, or is in your dealership for service in the future, you must take the steps necessary to be sure the recall correction has been made before selling or releasing the vehicle.

Customers who have recently purchased vehicles sold from your vehicle inventory, and for which there is no customer information indicated on the dealer listing, are to be contacted by the dealer. Arrangements are to be made to make the required correction according to the instructions contained in this bulletin. Recall follow-up cards should not be used for this purpose, since the customer may not as yet have received the notification letter.

Dealers are to service all vehicles subject to this recall at no charge to customers, regardless of mileage, age of vehicle, or ownership, from this time forward.

All unsold new vehicles in dealers' possession and subject to this recall _must_ be held and inspected/repaired per the service procedure of this recall bulletin _before_ customers take possession of these vehicles.

Shares

14330: Product Safety – Loss of Power Steering Assist – 2014 Chevrolet Impala | General Motors

result, GM is conducting a safety recall. We apologize for this inconvenience. However, we are concerned about your safety and continued satisfaction with our products.

*IMPORTANT*

- Your vehicle is involved in GM recall 14330.
- Schedule an appointment with your GM dealer.
- This service will be performed for you at **no charge.**

| | |
|---|---|
| **Why is your vehicle being recalled?** | Your vehicle may experience an intermittent or lasting loss or reduction of power steering assist at startup or while driving due to a poor electrical ground connection to the Power Steering Control Module (PSCM). If power steering assist is lost or reduced, a message is displayed on the Driver Information Center and a chime sounds to inform the driver. Steering control can be maintained because the vehicle will revert to manual steering mode, but would require greater driver effort particularly at low vehicle speeds, increasing the risk of a crash. |
| **What will we do?** | Your GM dealer will clean the Power Steering Control Module (PSCM) ground at the strut tower, and update the PSCM software. This service will be performed for you at no charge. Because of service scheduling requirements, it is likely that your dealer will need your vehicle longer than the actual time of approximately 35 minutes |
| **What should you do?** | You should contact your GM dealer to arrange a service appointment as soon as possible. |
| **Do you have questions?** | If you have questions or concerns that your dealer is unable to resolve, please contact the appropriate Customer Assistance Center at the number listed below. |
| **Division** | **Number** **Text Telephones (TTY)** |

https://gm.oemdtc.com/6884/14330-product-safety-loss-of-power-steering-assist-2014-chevrolet-impala

14330: Product Safety – Loss of Power Steering Assist – 2014 Chevrolet Impala | General Motors

| Chevrolet | 1-800-222-1020 | 1-800-833-2438 |
| Puerto Rico – English | 1-800-496-9992 | |
| Puerto Rico – Español | 1-800-496-9993 | |
| Virgin Islands | 1-800-496-9994 | |

If after contacting your dealer and the Customer Assistance Center, you are still not satisfied we have done our best to remedy this condition without charge and within a reasonable time, you may wish to write the Administrator, National Highway Traffic Safety Administration, 1200 New Jersey Avenue, SE, Washington, DC 20590, or call the toll-free Vehicle Safety Hotline at 1.888.327.4236 (TTY 1.800.424.9153), or go to http://www.safercar.gov. The National Highway Traffic Safety Administration Campaign ID Number for this recall is 14V450.

Federal regulation requires that any vehicle lessor receiving this recall notice must forward a copy of this notice to the lessee within ten days.

Jeffrey M. Boyer

Vice President

Global Vehicle Safety

GM Recall #14330

# EXHIBIT F



AMERICAN ARBITRATION ASSOCIATION | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

1101 Laurel Oak Road
Voorhees, NJ 08043

February 20, 2019

GM Financial
801 Cherry Street
Suite 3500
Fort Worth, TX 76102
Via Mail

Katherine H. Moor, Esq.
General Motors, LLC
400 Renaissance Center
Detroit, MI 48243-1502
Via Mail

H&L Chevrolet
1416 Post Road
Darien, CT 06820
Via Mail

Richard Chevy
1405 Highland Avenue
Route 10
Cheshire, CT 06410
Via Mail

**Case Number: 01-19-0000-4534**

Debbi Cotterell and Timothy Smith
-vs-
GM Financial
-vs-
Katherine H. Moor
-vs-
H&L Chevrolet
-vs-
Richard Chevy

Dear Parties:

The claimant has filed with us a demand for arbitration. The American Arbitration Association ("AAA") has determined that this arbitration arises out of a consumer agreement and, as such, the Consumer Arbitration Rules ("Consumer Rules") apply to this dispute. The Consumer Rules may be found on our website at www.adr.org.

Under R-12 of the Consumer Rules, businesses that provide for AAA arbitration in a consumer contract are obligated to submit their current or proposed consumer agreements to the AAA for review and inclusion on the Consumer Clause Registry ("Registry"). The AAA reviews the agreement for material compliance with the due process standards of the Consumer Due Process Protocol ("Protocol") and the Consumer Rules. The AAA's

review is administrative; it is not an opinion on whether the arbitration agreement, the contract, or any part of the contract is legally enforceable.

This business has not previously submitted its consumer arbitration clause for review. As such, the AAA will review the clause for this matter on an expedited basis. The additional fee for this expedited review is $250, payable by the business.

**The business is also directed to submit its current consumer arbitration clause for inclusion on the Registry at** https://www.adr.org/Consumer **at which time the business will also incur a $500 Registry fee.** Once the business' clause is registered, it will no longer be assessed the $250 additional expedited review fee on each consumer case filed.

Under the Consumer Rules, the consumer pays a filing fee of $200 and the business pays a filing fee of $300. We have received the consumer's $200 portion of the filing fee. So that the filing requirements are complete, **the business is requested to submit filing fees of $300, the expedited consumer clause review fee of $250 and its arbitrator's compensation deposit of $2,500, totaling $3,050.**

**Please make the check payable to the** American Arbitration Association **and include a reference to the case number. Checks should be mailed to** 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043. **In the event that payment is being made by a third party, such as an insurance company, please request that payment be sent directly to the business' representative. The business' representative should then forward payment to the AAA in accordance with the foregoing instructions.**

**The requested payment should be received no later than** March 6, 2019 **and the AAA may decline to administer this dispute if the business does not timely respond.** It should be noted that the consumer's satisfaction of the filing requirements triggers the business' obligation to promptly pay its share of the filing fees under the rules and the business may owe all or a portion of the filing fees even if the matter is settled or withdrawn. The AAA will refund any overpayments received from the consumer with the filing.

No answering statement or counterclaim is due at this time and the parties will be notified of the applicable deadlines upon satisfaction of all the filing requirements.

Please note all communication for this matter will be in writing, if you have any questions please feel free to send us an e-mail.

Sincerely,
Consumer Filing
Email: ConsumerFiling@adr.org
Fax: (877)304-8457

cc:
Debbi Cotterell
17 Renwick Street
Unit C
Stamford, CT 06902
Via Email to: debbisimms@gmail.com

# RYAN RYAN DELUCA LLP

## ATTORNEYS AT LAW

CITYPLACE II

185 ASYLUM STREET, 6TH FLOOR

HARTFORD, CT 06103

TELEPHONE: (860) 785-5150

FAX: (860) 785-5040

www.ryandelucalaw.com

CHARLES A. DELUCA•
DANIEL E. RYAN III•
MICHAEL T. RYAN•
ROBERT C.E. LANEY•
CATHERINE S. NIETZEL•
ROBERT O. HICKEY•
JAMES J. NOONAN
JOHN F. COSTA
STEVEN H. MALITZ
JAMES A. MAHAR
BECK S. FINEMAN
JANICE D. LAI•∆
MARIA ALEXANDER•
JOHN W. CANNAVINO JR.•
MICHAEL R. YOUNG•
CLAIRE E. RYAN◊
CHRISTOPHER J. LYNCH•
MICHAEL P. KENNEY•∆

MACIEJ A. PIATKOWSKI•
LIAM M. WEST•
JONATHAN C. ZELLNER•
MICHAEL C. BARBARULA•
THOMAS S. LAMBERT•
MEREDITH C. LANDER
RAYMOND J. CARTA•
JANIE R. EDDY
IRENE J. KIM
NATHAN M. MAYHEW•⊙∆
ALLISON R. PRAINITO•
EDWARD N. STORCK III•
JOHNATHAN L. KONANDREAS•
KURT J. YOUNG JR.•⊙
CHARLES POBEE-MENSAH•
KAREN L. ALLISON•
LINDSAY T. REED

*OF COUNSEL*
CHARLES M. MCCAGHEY
KEVIN M. TEPAS•
ELIZABETH RYAN LANE
KIERAN M. RYAN
COLLEEN M. MAGARIAN∆

•  NOT ADMITTED IN NEW YORK
◊  ALSO ADMITTED IN TEXAS
+  ALSO ADMITTED IN MAINE AND VERMONT
⊙  ALSO ADMITTED IN MASSACHUSETTS
♦  ALSO ADMITTED IN DISTRICT OF COLUMBIA
∆  NOT ADMITTED IN CONNECTICUT

**Stamford Address:**
707 Summer Street
Stamford, CT 06901
Phone: (203) 357-9200
Fax: (203) 357-7915

**New York Address:**
45 Knollwood Road, Suite 301
Elmsford, NY 10523
Phone: (888) 656-9334
Fax: (888) 656-9335

**Bridgeport Address:**
1000 Lafayette Blvd, Suite 800
Bridgeport, CT 06604
Phone: (203) 549-6650
Fax: (203) 549-6655

March 15, 2019

**BY E-MAIL AND CERTIFIED U.S. MAIL**
debbisimms@gmail.com

Debbi Cotterell and Timothy Smith



Re:   <u>**Debbi Cotterell and Timothy Smith v. Richard Chevrolet, Inc., et al**</u>
      Case No. 01-19-0000-4534

Dear Ms. Cotterell and Mr. Smith:

As you know, my firm and I represent Richard Chevrolet, Inc., in the above-referenced claim for arbitration currently pending before the American Arbitration Association ("AAA"). On behalf of Richard Chevrolet, and with the permission of ACAR Leasing Ltd. d/b/a GM Financial Leasing, please allow this letter to confirm our discussions and memorialize our agreement in connection with your claim. As we have discussed, there are other parties that should be present for full consideration of your claims who are not subject to the arbitration provision set forth in the lease agreement dated August 10, 2015. You have agreed that there is a mutual interest in these parties being present and there is currently no mechanism for ensuring their participation in the arbitration.

**RYAN RYAN DELUCA LLP**

March 15, 2019
Page 2

      As a result, and in furtherance of our mutual interests, Richard Chevrolet and ACAR Leasing Ltd. d/b/a GM Financial Leasing stipulate and agree that neither Richard Chevrolet nor ACAR Leasing Ltd. d/b/a GM Financial Leasing will pursue arbitration upon your proper filing of an action in State and Federal Court in exchange for your agreement to immediately withdraw the subject arbitration without prejudice.  The parties otherwise reserve all rights at law and in equity.  You have agreed to the immediate withdrawal of the arbitration upon receipt of this letter.  In light of the deadline for submission of filing fees of Monday, March 18, 2019, upon acknowledgment of your receipt of this letter, we will report to AAA your intention to withdraw the arbitration in lieu of payment of the required fees.

      Thank you for your cooperation in this regard.

Very truly yours,

Edward N. Storck III, Esq.
enstorck@ryandelucalaw.com

ACKNOWLEDGED AND AGREED:

Counsel for ACAR Leasing Ltd.
d/b/a GM Financial Leasing

ENS:ens
cc: Michael T. Grant, Esq. – By E-mail only
    Michael.grant@leclairryan.com

S:\RyanSTI0408\LIT\DOCS\path.rtf
8290.051

8/13/2019                        Gmail - RE: Case Number: 01-19-0000-4534

 **Gmail**                    **Debbi Simms <debbisimms@gmail.com>**

---

# RE: Case Number: 01-19-0000-4534
1 message

---

**Consumer Case Filing Team** <ConsumerFiling@adr.org>        Thu, Mar 14, 2019 at 11:27 AM
To: Katherine Moor ▬▬▬▬▬▬▬
Cc: Consumer Case Filing Team <ConsumerFiling@adr.org>, Debbi Simms <debbisimms@gmail.com>,
"michael.grant@leclairryan.com" <michael.grant@leclairryan.com>

Hello,

Thank you for your correspondence, we have uploaded it to the case for review. We will be reaching out shortly.

Thank you,

Consumer Filing Team

   **Consumer Case Filing Team**

1101 Laurel Oak Road
Suite 100, Voorhees, NJ 08043
E: ConsumerFiling@adr.org

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** Katherine Moor ▬▬▬▬▬▬▬▬▬▬
**Sent:** Monday, March 4, 2019 2:27 PM
**To:** Consumer Case Filing Team <ConsumerFiling@adr.org>
**Subject:** Case Number: 01-19-0000-4534

### *** External E-Mail – Use Caution ***

To Whom It May Concern,

Please note that I am an individual and have had no agreement of any kind, including a consumer agreement, with the claimant, Ms. Cotterell.

Please remove me from further correspondence in this matter.

# EXHIBIT G

**GM FINANCIAL**
2 late payments

$16,611  ∧
Paid, closed

 **Account Info**

Hover over labels for more details

Account number  **017107XXXX**          Balance
                                        **$16,611**
Account status  **Closed**

| | |
|---|---|
| Date opened | **Aug 1, 2015** |
| Account type | **Auto Lease** |

---

💲 **Payment Info**

| | |
|---|---|
| Status | **Repossession** |
| Updated on | **Jan 1, 2018** |
| Past due amount | **$16,611** |
| Original loan amount | - |
| Monthly payment | - |
| Late payments | **Dec 2017**<br>**Nov 2017** |

You've made **97%** of your payments on time for this account.

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | S |
|---|---|---|---|---|---|---|---|---|---|
| 2019 | FP | FP | FP | FP | FP | FP | FP | FP | |
| 2018 | FP | FP | FP | FP | FP | FP | FP | FP | |
| 2017 | | | | | | | | | |
| 2016 | | | | | | | | | |
| 2015 | | | | | | | | | |

On Time                              30 Days Late                    FP Fa

60 Days Late

---

📄 **Additional info**

| | |
|---|---|
| Responsibility | **Joint Account** |
| Terms | **36 Months** |
| Company sold | - |
| Original creditor | - |

Comments      **Account in dispute-reported by subscribe**
**Account information disputed by consum**
**Reporting Act**

Your statements      -

---

✉️ **Contact**

PO BOX 181145
ARLINGTON, TX 76096
(800) 284-2271 (tel:8002842271)

**Is everything correct?**

If inaccurate information appears on your report, you can con
to have it corrected, or let us know online or by mail.

┌─────────────────────┐
│ Dispute this account │
└─────────────────────┘

---

**WELLS FARGO DEALER SVC**
**Exceptional** payment history

$0  ⌄

**Paid**, closed

---

# EXHIBIT H



**GM FINANCIAL** LEASING

February 27, 2019

4000 Embarcadero Dr.
Arlington, TX 76014
Toll Free:  855-719-9688
Fax:  877-287-5484

COTTERELL, DEBBIE

RE:  Account Number 171076187
Vehicle: 2015 CHEVROLET IMPALA
VIN: 2G1125S30F9251501

Dear COTTERELL, DEBBIE:

***GETTING A TAX REFUND OR HAVE CASH AVAILABLE***

Please be advised that GM Financial Leasing will accept a 50% reduction on your balance of $16611.99 as a settlement on the above referenced account.

Please send the agreed upon settlement amount of $8305.995, in certified funds, by 3/15/2019.

Upon receipt and application of the settlement amount listed above, GM Financial Leasing will close your account and provide an update regarding the settled status to the applicable credit reporting agencies. If this amount is not received on the above agreed upon date, this settlement offer is null and void, and the entire balance of $16611.99 will be due immediately.

Should you have any questions concerning this account, please contact us.

Sincerely,


Lease Loss Recovery Department
Toll Free Number 855-719-9688

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
If you have any questions, please do not hesitate to contact the Lease Loss Recovery Department at (855) 719-9688, Monday through Thursday from 8:00 AM until 8:00 PM, and Friday from 8:00 AM until 5:00 PM Central Standard Time.


Remit to:
GM Financial Leasing
P.O. Box 78143
Phoenix, AZ 85062

### ERNEST A. LADEN
### STATE MARSHAL FAIRFIELD COUNTY

STATE OF CONNECTICUT

                   SS: Cheshire                June 24, 2020

COUNTY OF FAIRFIELD

Then and there, by virtue hereof, I made service of the within original Writ, Summons, Complaint, Prayer For Relief, Exhibit A, Exhibit B, Exhibit C, Exhibit D, Exhibit E, Exhibit F, Exhibit G , and Exhibit H, by leaving a true and attested copy of the within original Writ, Summons, Complaint, Prayer For Relief, Exhibit A, Exhibit B, Exhibit C, Exhibit D, Exhibit E, Exhibit F, Exhibit G , and Exhibit H, by leaving a true and attested copy with and in the hands of Jill Silverman, Assistant General Manager, Richard Chevrolet, Inc., and the individual accepting service for the defendant Richard Chevrolet, Inc., service made at the defendants office at 1405 Highland Avenue, Cheshire, CT.

                   SS: Darien              June 23, 2020

Then and there, by virtue hereof, I made service of the within original Writ, Summons, Complaint, Prayer For Relief, Exhibit A, Exhibit B, Exhibit C, Exhibit D, Exhibit E, Exhibit F, Exhibit G , and Exhibit H, by leaving a true and attested copy of the within original Writ, Summons, Complaint, Prayer For Relief, Exhibit A, Exhibit B, Exhibit C, Exhibit D, Exhibit E, Exhibit F, Exhibit G , and Exhibit H, with and in the hands of Adam Haims, Vice President of H&L Chevrolet, Inc. and the individual accepting service for the defendant H&L Chevrolet, Inc., 1416 Post Road, Darien, CT.

At least one such copy for each of the within named defendants.

The within and foregoing is the original Writ, Summons, Complaint, Prayer For Relief, Exhibit A, Exhibit B, Exhibit C, Exhibit D, Exhibit E, Exhibit F, Exhibit G , and Exhibit H, with my doings hereon endorsed.

| | | | |
|---|---|---|---|
| Travel | $ | 32.80 | |
| Copies | $ | 156.00 | |
| Services | $ | 80.00 | |
| Endorsement | $ | 1.20 | |
| State & Mailing Fee | $ | 0.00 | |
| Total | $ | 270.00 | |

ATTEST:_____

Ernest A. Laden
State Marshal for Fairfield County

## AFFIDAVIT OF SERVICE

| Case: | Court:<br>State of Connecticut Superior Court | County:<br>Hartford | Job:<br>4624128 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>DEBBI COTTERELL | | Defendant / Respondent:<br>GENERAL MOTORS LLC, ACAR LEASING LTD d/b/a GENERAL MOTORS FINANCIAL LEASING, RICHARD CHEVROLET, INC., and H & L CHEVROLET, INC. | |
| Received by:<br>Armorbearer Investigations, LLC | | For:<br>We Serve NJ LLC | |
| To be served upon:<br>GENERAL MOTORS LLC | | | |

I, Miguel Bruce, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address:   GENERAL MOTORS LLC, 40600 Ann Arbor Rd E Suite 201, Plymouth, MI 48170

Manner of Service:     Authorized, Jun 29, 2020, 11:03 am EDT

Documents:     Summons (Received Jun 19, 2020 at 11:50am EDT), Complaint (Received Jun 19, 2020 at 11:50am EDT)

Additional Comments:
1) Unsuccessful Attempt: Jun 22, 2020, 11:45 am EDT at 300 Renaissance Dr W, Detroit, MI 48226
The offices are still closed, but the security contacted some one from the department that accept service of the Legal documents. I was informed that the Registered Agent who is accepting service for GM is CT Corp at 40600 Ann Arbor Rd E, Suite 201, Plymouth, MI

2) Successful Attempt: Jun 29, 2020, 11:03 am EDT at 40600 Ann Arbor Rd E Suite 201, Plymouth, MI 48170 received by GENERAL MOTORS LLC.
Wolters Klower, Intake Specialist, accepted service as the Registered Agent.

_____     6/29/2020
Miguel Bruce                              Date

Armorbearer Investigations, LLC
P.O Box 539
Belleville, MI 48112-0539
313 347-3341

Subscribed and sworn to before me by the affiant who is personally known to me.

_____
Notary Public

6/29/2020          July 7, 2020
Date               Commission Expires

TERESA M. GUESS
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMMISSION EXPIRES Jul 7, 2020
ACTING IN COUNTY OF Wayne

**STATE OF CONNECTICUT**
**SUPERIOR COURT**

**DEBBI COTTERELL,**                                    Plaintiff(s) – Petitioner(s)

**VS.**

**GENERAL MOTORS LLC,**
**ACAR LEASING LTD D/B/A**
**GENERAL MOTORS FINANCIAL LEASING,**
**RICHARD CHEVROLET, INC., AND**
**H & L CHEVROLET, INC.**                               Defendant(s) – Respondents(s)

---

STATE OF TEXAS
COUNTY OF TARRANT                    ss.:

**Jacqueline Tyler**, the undersigned, being duly sworn, deposes and says that I was at the time of service over the age of 18 years and not a party to this action.

On **6/19/2020** at **2:15 PM**, I served a true copy of a **SUMMONS, COMPLAINT, EXHIBIT A-H, RULING ON MOTIONS TO DISMISS** upon **ACAR LEASING LTD D/B/A GM FINANCIAL LEASING at 801 CHERRY ST., SUITE 3500, FORT WORTH, TX 76102** in the he manner indicated below:

**Corporation**    By delivering a true copy of each to **Jennifer Smith** personally.
**[ X ]**          Deponent knew said corporation served to be the corporation described as the named recipient and knew said individual to be the **Legal Representative** thereof, and an authorized person to accept service of process.

| Approximate Description of Receipt | Female | White | Blonde/Brown | 40/50 | | 135 lbs. | Glasses |
|---|---|---|---|---|---|---|---|
| | Sex | Skin | Hair Color | Age | Height | Weight | Other |

Sworn to before me this
_22_ day of _June_, 20_20_

_____
Notary Public



Jacqueline Tyler #13440
PO BOX 8155
Fort Worth, TX 76124
800-637-1805

CARLOS CASTILLO
Notary Public
STATE OF TEXAS
My Comm. Exp. 08-29-23
Notary ID # 13215317-7

**JDNO NOTICE**

**FST-CV-20-6047107-S     COTTERELL, DEBBI v. GENERAL MOTORS LLC Et Al**

Notice Issued: **06/18/2020**

**Court Address:**
CLERK, SUPERIOR COURT
JUDICIAL DISTRICT OF STAMFORD-NORWALK
123 HOYT STREET
STAMFORD, CT 06905

**Notice Content:**
Notice Issued: **06/18/2020**
Docket Number: **FST-CV-20-6047107-S**
Case Caption: **COTTERELL, DEBBI v. GENERAL MOTORS LLC Et Al**
Notice Sequence #: **1**

　　　JDNO NOTICE

07/27/2020 AT 8:30AM

The above-captioned case has been individually assigned to the Honorable Robert Genuario.

The prefix "FS1" has been assigned to this case for assignment purposes and will appear on all short calendars.

This notice is for informational purposes only. No court appearance is required.

Please direct all questions regarding this individual calendar assignment to Catherine Cannizzaro Civil Caseflow matters at 203-965-5332 or email: Catherine.cannizzaro@jud.ct.gov.

All questions regarding the Short Calendar, Specia Proceedings and Hearing in Damages should be directed to the civil clerk's office at 203-965-5308.

***Please be advised this notice is to advise you of individual calendar judge assignment only. The date indicated above is not a date to report to court unless the case has been assigned otherwise.

# APPEARANCE

JD-CL-12 Rev. 1-12
P.B. §§ 3-1 thru 3-6, 3-8, 10-13, 25A-2

STATE OF CONNECTICUT
## SUPERIOR COURT
www.jud.ct.gov

**Instructions** — *See Back/Page 2*

### Notice To Self-Represented Parties
*A self-represented party is a person who represents himself or herself. If you are a self-represented party and you filed an appearance before and you have since changed your address, you must let the court and all attorneys and self-represented parties of record know that you have changed your address by checking the box below:*

☐ *I am filing this appearance to let the court and all attorneys and self-represented parties of record know that I have changed my address. My new address is below.*

| | |
|---|---|
| Return date | **Jul-21-2020** |
| Docket number | **FST-CV-20-6047107-S** |

**Name of case** *(Full name of Plaintiff vs. Full name of Defendant)*

**COTTERELL, DEBBI  v. GENERAL MOTORS LLC Et Al**

| | | | | |
|---|---|---|---|---|
| ☒ Judicial District | ☐ Housing Session | ☐ Small Claims | ☐ Geographic Area number | Address of Court *(Number, street, town and zip code)* **123 HOYT STREET STAMFORD, CT 06905** |

Scheduled Court date *(Criminal/Motor Vehicle Matters)*

## Please Enter the Appearance of

| Name of self-represented party *(See "Notice to Self-Represented Parties" at top)*, or name of official, firm, professional corporation or individual attorney | Juris number of attorney or firm |
|---|---|
| **MICHAEL THOMAS GRANT** | **429165** |

| **Mailing Address** *(Number, street) (Notice to attorneys and law firms - The address to which papers will be mailed from the court is the one registered or affiliated with your juris number. That address cannot be changed in this form.)* **100 HIGH STREET SUITE 2400** | Post office box | Telephone number *(Area code first)* **857-488-4218** |
|---|---|---|

| City/town **BOSTON** | State **MA** | Zip code **02110** | Fax number *(Area code first)* | E-mail address **mtgrant@duanemorris.com** |
|---|---|---|---|---|

in the case named above for: *("x" one of the following parties; if this is a Family Matters case, also indicate the scope of your appearance)*

☐ The Plaintiff *(includes the person suing another person).*
☐ All Plaintiffs.
☐ The following Plaintiff(s) only:
☐ The Defendant *(includes the person being sued or charged with a crime).*
☐ The Defendant for the purpose of the bail hearing only *(in criminal and motor vehicle cases only).*
☐ All Defendants.
☒ The following Defendant(s) only: **Pty# D-02 ACAR LEASING LTD, D/B/A GM FINANCIAL LEA**
☐ Other *(Specify):*
☐ This is a Family Matters case and my appearance is for: *("x" one or both)*
  ☐ matters in the Family Division of the Superior Court     ☐ Title IV-D Child Support matters

*Note: If other counsel or a self-represented party has already filed an appearance for the party or parties "x'd" above,  put an "x" in box 1 or 2 below:*

1. ☐ This appearance is in place of the appearance of the following attorney, firm or self-represented party on file *(P.B. Sec. 3-8):*

*(Name and Juris Number)*

2. ☐ This appearance is in addition to an appearance already on file.

| **I agree to accept papers (service) electronically in this case under Practice Book Section 10-13** | ☒ Yes | ☐ No |
|---|---|---|

| Signed *(Individual attorney or self-represented party)* ▶ **429165** | Name of person signing at left *(Print or type)* **MICHAEL THOMAS GRANT** | Date signed **Jul 10 2020** |
|---|---|---|

## Certification

I certify that a copy of this document was mailed or delivered electronically or non-electronically on *(date)* **Jul 10 2020** to all attorneys and self-represented parties of record and that written consent for electronic delivery was received from all attorneys and self-represented parties receiving electronic delivery.

| Name and address of each party and attorney that copy was mailed or delivered to* **DEBBI COTTERELL (Self Represented) - UNIT C 17 RENWICK ST APT C STAMFORD, CT 06902** | For Court Use Only |
|---|---|

| Signed *(Signature of filer)* ▶ **429165** | Print or type name of person signing **MICHAEL THOMAS GRANT** | Date signed **Jul 10 2020** | Telephone number **857-488-4218** |
|---|---|---|---|

*If necessary, attach an additional sheet or sheets with the name of each party and the address which the copy was mailed or delivered to.

# APPEARANCE

JD-CL-12 Rev.  1-12
P.B. §§ 3-1 thru 3-6, 3-8, 10-13, 25A-2

STATE OF CONNECTICUT
## SUPERIOR COURT
www.jud.ct.gov

**Instructions —** *See Back/Page 2*

### Notice To Self-Represented Parties

*A self-represented party is a person who represents himself or herself.* If you are a self-represented party and you filed an appearance before and you have since changed your address, you must let the court and all attorneys and self-represented parties of record know that you have changed your address by checking the box below:

☐ I am filing this appearance to let the court and all attorneys and self-represented parties of record know that I have changed my address. My new address is below.

| Return date |
| --- |
| **Jul-21-2020** |
| Docket number |
| **FST-CV-20-6047107-S** |

**Name of case** *(Full name of Plaintiff vs. Full name of Defendant)*

### COTTERELL, DEBBI  v. GENERAL MOTORS LLC Et Al

| ☒ Judicial District | ☐ Housing Session | ☐ Small Claims | ☐ Geographic Area number | Address of Court *(Number, street, town and zip code)* |
| --- | --- | --- | --- | --- |
| | | | | **123 HOYT STREET STAMFORD, CT 06905** |

Scheduled Court date *(Criminal/Motor Vehicle Matters)*

## Please Enter the Appearance of

| Name of self-represented party *(See "Notice to Self-Represented Parties" at top)*, or name of official, firm, professional corporation, or individual attorney | Juris number of attorney or firm |
| --- | --- |
| **TIMOTHY JOSEPH DUGGAN** | **415008** |

| **Mailing Address** *(Number, street) (Notice to attorneys and law firms - The address to which papers will be mailed from the court is the one registered or affiliated with your juris number. That address cannot be changed in this form.)* | Post office box | Telephone number *(Area code first)* |
| --- | --- | --- |
| **89 ACCESS ROAD UNIT A** | | **781-762-0077** |

| City/town | State | Zip code | Fax number *(Area code first)* | E-mail address |
| --- | --- | --- | --- | --- |
| **NORWOOD** | **MA** | **02062** | **781-762-9299** | **tjd@dcclawyers.com** |

in the case named above for: *("x" one of the following parties; if this is a Family Matters case, also indicate the scope of your appearance)*

☐ The Plaintiff *(includes the person suing another person).*
☐ All Plaintiffs.
☐ The following Plaintiff(s) only:
☐ The Defendant *(includes the person being sued or charged with a crime).*
☐ The Defendant for the purpose of the bail hearing only *(in criminal and motor vehicle cases only).*
☐ All Defendants.
☒ The following Defendant(s) only: **Pty# D-01 GENERAL MOTORS LLC**
☐ Other *(Specify):*
☐ This is a Family Matters case and my appearance is for: *("x" one or both)*
　　☐ matters in the Family Division of the Superior Court　　☐ Title IV-D Child Support matters

*Note: If other counsel or a self-represented party has already filed an appearance for the party or parties "x'd" above,  put an "x" in box 1 or 2 below:*

1. ☐ This appearance is in place of the appearance of the following attorney, firm or self-represented party on file *(P.B. Sec. 3-8):*
2. ☐ This appearance is in addition to an appearance already on file.

*(Name and Juris Number)*

| **I agree to accept papers (service) electronically in this case under Practice Book Section 10-13** | ☒ Yes | ☐ No |
| --- | --- | --- |

| Signed *(Individual attorney or self-represented party)* | Name of person signing at left *(Print or type)* | Date signed |
| --- | --- | --- |
| ▶ **415008** | **TIMOTHY JOSEPH DUGGAN** | **Jul 15 2020** |

## Certification

I certify that a copy of this document was mailed or delivered electronically or non-electronically on *(date)*  **Jul 15 2020**    to all attorneys and self-represented parties of record and that written consent for electronic delivery was received from all attorneys and self-represented parties receiving electronic delivery.

Name and address of each party and attorney that copy was mailed or delivered to*

**MICHAEL GRANT - 100 HIGH STREET/SUITE 2400/BOSTON, MA 02110**
**DEBBI COTTERELL (Self Represented) - UNIT C 17 RENWICK ST APT C STAMFORD, CT 06902**

*For Court Use Only*

| Signed *(Signature of filer)* | Print or type name of person signing | Date signed | Telephone number |
| --- | --- | --- | --- |
| ▶ **415008** | **TIMOTHY JOSEPH DUGGAN** | **Jul 15 2020** | **781-762-0077** |

*If necessary, attach an additional sheet or sheets with the name of each party and the address which the copy was mailed or delivered to.